# Titlow *versus* Titlow.

1. A testator was found to be a lunatic with lucid intervals and after the finding made a will; in a feigned issue on this will, instructions given by him a short time before he was found lunatic, for another will, which was drawn accordingly, and which was different from that in dispute, were proper evidence.

2. A change of intention is of no importance if there be a sound mind unconstrained, but when the question is whether there be such a mind, such change may be adduced to aid the inquiry.

3. Frequent declarations of the testator within ten years before his death, that he liked a brother better than his other relations, are not evidence on the question of sanity.

4. A legatee under a will immediately preceding that in contest, is a competent witness against the latter will.

5. Declarations of the executor, who was also plaintiff in the issue, and whose interest under the will was less than under the intestate laws,—made before the will was made, are not evidence against the will.

6. A subscribing witness who has been examined to the execution of the will, may be examined in rebuttal on the competency of the testator.

7. A subscribing witness may give his opinion of the testator's capacity without the facts on which it is founded,—other witnesses may not; but after they have testified to the facts, their opinions may be placed before the jury.

[Titlow *v.* Titlow.]

8. An inquisition of lunacy found is primâ facie evidence only.

9. A finding of lunacy with lucid intervals casts the burden of showing sanity on those sustaining the will.

February 4th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and READ, JJ. AGNEW, J., at Nisi Prius.

Error to the Court of Common Pleas of *Philadelphia.*

In the court below this was a feigned issue, directed by the Register's Court, to try whether certain paper writings were the will of Abraham Titlow, deceased.

The papers were a will dated July 18th, a codicil dated August 4th, and a codicil dated August 11th 1863.

They were admitted to probate by the register on the 25th of June 1864, and letters testamentary granted to David Titlow, the executor named in the will.

The will gave to his niece, Alcenia Schuyler, $6000, and a mortgage of $1000, the residue of his estate, to be distributed under the intestate laws.

The first codicil directed that his executor should hold his estate in trust for five years, divide the income annually amongst his heirs, and at the end of five years sell and divide his estate as directed in his will.

In his second codicil he directed the sale and division to take place at any time after a year and a day from his death.

There was another will, dated May 30th 1863, offered to the register for probate, but not admitted. On the trial its execution was proved, and it was received in evidence.

Joseph Titlow and John Titlow, brothers, and Hannah Fisher, a sister, appealed July 5th 1864 to the Register's Court, in which an issue was directed, December 3d 1864, between David Titlow, plaintiff, and John and Joseph Titlow and Hannah Fisher, defendants.

The case came on for trial in the Common Pleas, April 30th 1866, before Pierce, J.

The plaintiff, having proved the execution of the will, rested.

The defendants then gave in evidence proceedings in lunacy on Abraham Titlow, instituted November 21st 1863, on the petition of David Titlow. The inquisition finding lunacy with lucid intervals, from June 25th 1863, was returned March 16th 1864, and David Titlow was appointed one of the committee.

The defendants offered to prove by a witness whom they called " that in March 1863 Abraham Titlow requested witness to draw his will, devising 20 acres of his land to his brother Joseph, and the remaining 14 to his nephews and nieces, excepting David Titlow and his children ; and that he then stated, that he would give nothing to John, because he was well enough off, and that he would give nothing to David or his family, because when

[Titlow *v.* Titlow.]

he was in want of help he declined to help him; and that the witness did draw such a will and give it to Abraham Titlow; and further, that when witness asked Abraham why he gave to Joseph so much, he stated Joseph was the poorest, and had a large family." The court rejected the offer, and an exception was taken.

The defendants then called Christiana Drum and George Titlow, legatees under the will of May 30th 1863, who were objected to as incompetent, rejected and exception taken.

The defendants offered to prove by a witness, " That in frequent conversations with Abraham for a period of ten years preceding his death, Abraham always said he liked Joseph the best."

The offer was rejected and an exception taken.

A witness having stated that he had conversations with David Titlow in July 1863, about the sanity of Abraham; the defendants offered to prove the conversations of David at that time and his statements as to the disposition to be made of the said Abraham, said conversations and statements being his opinion upon the sanity of Abraham Titlow at that time.

The offer was rejected and an exception taken.

The plaintiffs in rebuttal called Dr. Sidney R. Morris, who was a subscribing witness to the will, and had been examined in chief to prove its execution. He was asked to testify as to the general sanity of the testator. This was objected to by the defendants as being evidence which should have been given in chief, but was admitted and an exception taken.

The plaintiffs offered to prove that on the 14th or 15th of July 1863, the testator said to David he wished him to be his executor; that he said he ought to get John to act, as he was the eldest; that the testator said John would not act; that John was sent for and declined; that the testator handed David a paper (hereafter given) dated May 4th 1861, and told him to have a will drawn according to that paper, and the balance as the law allows, and put himself in as executor. This offer was objected to by the defendants, admitted and an exception taken.

A witness for the plaintiff in his testimony detailed conversations he had had with the testator, and then said of the testator, " he was then just as rational as any man could be." The defendants moved to strike out this expression.

The motion was overruled and an exception taken.

The plaintiff offered to prove " that testator said to the witness two days after the execution of the will, that he had made his will, and that he stated the contents of it to him; and that he subsequently stated to witness that he intended to make a codicil so that the property could not be sold for five years; and subsequently, that he meant to give David Titlow the right to sell it if he chose."

[Titlow *v.* Titlow.]

The defendants objected ; but the evidence was admitted and an exception taken.

The plaintiffs offered the following paper :—

" Philadelphia, May 4th 1861.

This is to Certify that I give bequeath to Philip S. Schuyler, Junr., undertaker, 19th Ward, six thousand dollars, lawful money, to be paid to him or his heirs or assigns after my discease, allso the Morgage that I hold against his property for one thousand dollars to be released to the said Philip R. Schuyler, Junr., his heirs and assigns forever. Sined by me on the fourth day of May in the year of ower Lord one thousand eight hundred sixty-one.

7,000.    ABRAH. TITLOW, his [SEAL]."

This was received against the defendants' objection and an exception taken.

The plaintiff offered to prove " the declarations of testator of good will to the Schuyler family, showing an uniform intention to dispose of his property in the manner he did dispose of it by will ;" and " that testator at the time of making his will had poor nieces, as he said he had, who are provided for as he said they were by his will."

The offers were severally objected to by the defendants, admitted and exception taken.

The defendants in surrebuttal for the purpose of contradicting David H. Schuyler, one of the plaintiff's witnesses, offered evidence that the plaintiff had once brought the testator back when he had gone out.

The offer was rejected and an exception taken.

The defendants requested the court to charge :—

1. That David Titlow is bound conclusively by the finding of the inquisition, he having promoted it, submitted to it and accepted the office of committee founded thereon :

2. That a lunatic has no power to pass his estate in land immediately by conveyance, or mediately by will, if the lunacy has been established by inquisition. A lucid interval can avail nothing, unless the finding as to lunacy in general has been avoided by due course of law : which the court refused, and an exception was taken.

The jury found for the plaintiff.

The defendants took a writ of error, and assigned for error the rulings on the evidence and the answers to their points.

*D. W. Sellers* and *G. M. Wharton*, for plaintiff in error, on the 1st and 2d exceptions cited Heister *v.* Lynch, 1 Yeates 108 ;

[Titlow *v.* Titlow.]

Starrett *v.* Douglass, 2 Id. 46; Redfield on Wills, ch. 10, §§ 2, 3, 4, p. 525–6, § 39, p. 528; Cartwright *v.* Cartwright, 1 Phillimore 90; Roberts *v.* Travick, 17 Ala. 55; Robinson *v.* Hutchinson, 26 Vt. 38; Waterman *v.* Whitney, 1 Kernan 157; McTaggart *v.* Thompson, 2 Harris 149; Rambler *v.* Tryon, 7 S. & R. 94; Chess *v.* Chess, 1 Penna. R. 32; Irish *v.* Smith, 8 S. & R. 573; Moritz *v.* Brough, 16 Id. 403; Norris *v.* Sheppard, 8 Harris 476; Kenyon *v.* Ashbridge, 11 Casey 161; Neel *v.* Potter, 4 Wright 483; Shay *v.* Henk, 13 Id. 79.

On the 3d exception, they cited 3 Greenlf. Ev. § 386; Bennett *v.* Hethington, 16 S. & R. 193; Commonwealth *v.* Allen, 6 Casey 49; Hatch *v.* Bartle, 9 Wright 167.

On the 5th exception, they cited Redfield on Wills, ch. 3, § 4; 2 Gray 524; Jacobs *v.* Tarleton, 63 Eng. C. L. R. 419; Bart *v.* Day, 7 Carr. & P. 705; Rees *v.* Smith, 2 Stark. Rep. 29; Gilpin *v.* Consequa, 3 Wash. C. C. R. 184.

On the 7th exception, they cited Greenlf. pt. 4, § 691; Rambler *v.* Tryon, 7 S. & R. 95; Logan *v.* McGinnis, 2 Jones 31; Poole *v.* Richardson, 3 Mass. 330.

On the exceptions to the charge, they cited Rogers *v.* Walker, 6 Barr 371; Harden *v.* Hays, Id. 409; Dodge *v.* March, 1 Hagg. 612; Gangwere's Estate, 2 Harris 417; Willis *v.* Willis, 2 Jones 159; Clark *v.* Caldwell, 6 Watts 139; Imhoff *v.* Witmer, 7 Casey 243; Act of 13th June 1836, Purd. 680, Pamph. L. 592, *Lunatics;* Tozer *v.* Saturlee, 3 Grant 163; Greenlf. on Ev. Pt. 3, ch. 5, § 556; Aber *v.* Clark, 5 Halstead 217; Leonard *v.* Leonard, 14 Pick. 280; Baxter *v.* Portsmouth, 5 Barn. & Cres. 170; Hutchinson *v.* Sandt, 4 Rawle 234; Attorney-General *v.* Parnther, 3 Bro. C. R. 369; Dean *v.* Negley, 5 Wright 312.

*E. Nichols, G. W. Thorn* and *W. L. Hirst,* for defendants in error, cited, on 1st and 2d exceptions, Kachline *v.* Clark, 4 Wh. 319; Heister *v.* Lynch, 1 Yeates 108; Norris *v.* Sheppard, 8 Harris 475; Kenyon *v.* Ashbridge, 11 Casey 157; O'Neal *v.* Murray, 4 Brad. 311; McMasters *v.* Blair, 5 Casey 298; Lobb *v.* Lobb, 2 Id. 327; Evans *v.* See, 11 Harris 88.

On the 3d exception they cited Flintham *v.* Bradford, 10 Barr 83.

On the 4th exception they cited Transue *v.* Brown, 7 Casey 92.

On the 5th exception they cited Garrigues *v.* Harris, 5 Harris 344; Lauchner *v.* Rex, 8 Id. 464; Barnhart *v.* Pettit, 10 Id. 139; Werstler *v.* Custer, 10 Wright 502.

On the 7th exception they cited Bricker *v.* Lightner, 4 Wright 205.

On the 9th exception they cited Neel *v.* Potter, 4 Wright 483.

On the exceptions to the charge they cited Rogers *v.* Walker,

[Titlow v. Titlow.]

6 Barr 371; Harden v. Hays, Id. 409; Gangwere's Estate, 2 Harris 417; Willis v. Willis, 2 Jones 159–161; Hutchinson v. Sandt, 4 Rawle 234; Imhoff v. Witmer, 7 Casey 244; Bannatyne v. Bannatyne, 14 Eng. Law & Eq. 581.

They cited also, Dunham's Appeal, 27 Conn. 192; Van Pelt v. Van Pelt, 30 Barb. 134; Stubbs v. Houston, 33 Ala. 555; Watson v. Donnelly, 28 Barb. 653; Stevenson v. Stevenson, 9 Casey 469; McMasters v. Blair, 5 Id. 298; Gaither v. Gaither, 20 Geo. 709; Overton v. Overton, 18 B. Monroe (Ky.) 61; Brown v. Tracy, 24 Barb. 583; Dean v. Dean, 1 Williams (Vt.) 746; Zimmerman v. Zimmerman, 11 Harris 375; Hoshauer v. Hoshauer, 2 Casey 404; McMahon v. Ryan, 8 Harris 329; Norris v. Sheppard, 8 Id. 475; Leech v. Leech, 9 Id. 67; Dean v. Negley, 5 Wright 312; Blakey v. Blakey, 33 Ala. 611; Sutton v. Sutton, 5 Harrington (Del.) 459; Taylor v. Kelly, 31 Ala. 59; McDaniel v. Crosby, 19 Ark. 533; Morris v. Stokes, 21 Geo. 552; Tunison v. Tunison, 4 Bradley 138; O'Neil v. Murry, 4 Bradford 311; Neel v. Potter, 4 Wright 483; Daniel v. Daniel, 3 Id. 191; Rees v. Stillé, 2 Id. 138; Robinson v. Hutchinson, 26 Vt. 38; Addlagon v. Wilson, 5 Ind. 137; Kenworthy v. Williams, 5 Id. 375.

The opinion of the court was delivered, February 14th 1867, by STRONG, J.—The principal questions submitted to the jury in this case were whether Abraham Titlow was of sound mind on the 18th of July, on the 4th of August and on the 11th of August 1863, when the alleged will and codicils were made, and whether those instruments were made under the pressure of undue influence. By inquisition taken in 1864 he was found a lunatic, and found to have been such from the 25th day of June 1863, but with lucid intervals. On the trial, the defendants below, now plaintiffs in error, in order to show either mental unsoundness or undue influence, or both, at the time when the will was made, offered to prove that in March 1863, the testator had given instructions for the preparation of a will, making a very different disposition of his property from that made by the will in controversy; that a will was then prepared in harmony with such instructions and given to him; and that he assigned reasons for the testamentary disposition he then proposed. This offer the court overruled, and herein we think there was error.

The declarations offered were made some two months before the established lunacy, and they show a testamentary intent quite different from that which is manifested in the papers made in the July and August following. The presumption is that in March 1863 the testator was compos mentis. But some cause produced a radical change in his purposes and testamentary plans. Is not the variance between his intentions in March and his intentions

in July to be considered when the inquiry is what was his mental condition at the last-mentioned date? A change of intention is of no importance if there be a sound mind unconstrained; but when the question is whether there be such a mind, it is a circumstance that may be adduced in aid of the inquiry. That such evidence is admissible is asserted by the authorities almost without exception, and very often in this state. It will suffice merely to refer to a few: Heister *v.* Lynch, 1 Yeates 108; Starrett *v.* Douglass, 2 Id. 46; Irish *v.* Smith, 8 S. & R. 573; Norris *v.* Sheppard, 8 Harris 475. The 1st assignment of error must therefore be sustained.

The second assignment has less merit. It could have had no legitimate bearing upon the question whether the testator was sane in July 1863, or free from constraint in making his will, that he had frequently said within ten years preceding his death that he liked his brother Joseph better than his other relations.

But we think the court erred in excluding Christiana Drum from testifying bec:  ⸴ she was named as a legatee in a testamentary paper purporting to have been made by the testator on the 30th of May 1863. That did not show a certain interest either in the event of this suit or in the record. At most hers was but a contingent interest. The defeat of the probate of the paper of July did not establish as a will the paper of May. Had the verdict been for the defendants it could not have been used to support any former testamentary disposition. In no way, therefore, was the offered witness implicated in the legal consequences of any judgment that could be rendered in this case.

The declarations of David Titlow, offered to be proved by George Thomas, were properly rejected. True, he was the plaintiff in the feigned issue, but he was such only as a representative of those claiming interest under the will. His own interest was less than he would have taken under the intestate laws. There is then no reason why his declarations or admissions made, not while he was plaintiff, not even at the time when the alleged will was made, but at a time prior thereto, should be allowed to affect the decision of the question whether the instrument was a will.

The 5th assignment of error is hardly debateable under the practice in this state. It is settled with us that after proof of the execution of a will by the subscribing witnesses, a plaintiff who sustains a will may rest, on the prima facies of his case, and until the will has been assailed before he calls witnesses to sustain the competency of the testator. It is competent to recall subscribing witnesses for such a purpose. The ruling of the court to which this exception was taken accords with every day-practice, and it is reasonable.

We are also of opinion that no error is shown in the 6th assignment. The evidence was properly received at the time it

[Titlow v. Titlow.]

was offered, and if it were not the ruling of the court in regard to the order of evidence is not assignable for error.

The 7th assignment is not sustained. · The witness, when he gave his opinion, had detailed the conversations he had with the testator. It was in view of them and with reference to them his opinion was given. There is undoubtedly a difference between the admissibility of opinion of subscribing witnesses to a will and those of persons not subscribing witnesses. The former may be given in evidence without the facts upon which they are founded. The latter may not. But when the subscribing witnesses have testified to facts and circumstances upon which their opinions are grounded, the opinions themselves may be placed before the jury, who, having a knowledge of their groundwork, can judge of their value : Brickner v. Lightner, Exec'r, 4 Wright 199 ; Gibson v. Gibson, 9 Yerg. 329 ; Dunham's Appeal, 27 Conn. 192 ; Crane v. Northfield, 33 Vt. 124. If what we have said in regard to the 5th assignment of error be correct there is no foundation for the 8th.

Nor is there any for the 9th. That such declaration were proper to be admitted we have shown in our remarks upon the 1st assignment : see Neel v. Potter, 4 Wright 483.

The 10th and 11th assignments are also not sustained. The evidence admitted tends to show that when the declarations were made the testator had similar impressions to those which were upon his mind on the 18th of July 1863. It had therefore some bearing upon the questions, what was the state of his mind on that day, and whether he had in fact been unduly influenced in favor of Mrs. Schuyler.

It was error, however, to exclude George Titlow from testifying because of his being named as a legatee in the paper dated May 30th 1863. What we have said in regard to the competency of Christiana Drum applies equally to the 12th assignment of error.

We dismiss the 13th assignment with the remark that we do not perceive how the testimony offered tended to contradict the witness David H. Schuyler.

The two remaining assignments may be considered together. The plaintiffs in error requested the court to charge the jury that David Titlow is bound conclusively by the finding of the inquisition, he having promoted it, submitted to it, and accepted the office of committee founded thereon, and also, that a lunatic has no power to pass his estate in land immediately by conveyance or mediately by will ; and that after the lunacy has been established by inquisition a lucid interval can avail nothing, unless the finding as to lunacy in general has been avoided by due course of law. These propositions the court refused to affirm, and we think correctly. The general principle is, that an inquisition of lunacy found is primâ facie evidence in cases involving the sanity of the lunatic,

[Titlow *v.* Titlow.]

and no more; such is the doctrine of all our cases. Peculiar effect is sought to be attributed to the inquisition upon Abraham Titlow, because David Titlow, the executor named in the paper of July 18th 1863, was the party who promoted it. He signed the petition for an inquest, and he was subsequently appointed the committee of the lunatic. It is not perceived that this can make any difference in the legal effects of the inquisition. But suppose it were conclusive upon David Titlow, would that establish that Abraham Titlow could not make a will on the 18th of July? The inquisition can be conclusive only of that which was found by it. Abraham was found a lunatic, with lucid intervals. His ordinary condition was thus ascertained to be that of lunacy, but the inquisition found there were times when he was not a lunatic. It was enough to throw upon those who asserted his competency to make a will on the 18th of July 1863, the burden of showing it affirmatively, but it did not ascertain insanity on that day—even as against Abraham himself. How could it then as against any one else? See Harden *v.* Hays, 9 Barr 151; also Gangwere's Estate, 2 Harris 417. In the latter of these cases it was distinctly ruled that an inquisition of lunacy, finding the party a lunatic without lucid intervals, was primâ facie evidence only, and not conclusive, and a petitioner for the proceeding was not estopped from asserting the truth against it, and showing that the party had lucid intervals. See also Hutchinson *v.* Sandt, 4 Rawle 234. Much more is a petitioner for an inquest not estopped, by an inquisition finding lunacy but with lucid intervals, from asserting the existence of such intervals. There was no error, then, in the court's refusal to affirm the points mentioned.

But as the 1st, 3d and 12th assignments of error are sustained, a new *venire* is ordered.

Judgment reversed, and a *venire de novo* awarded.