# H. M. Shreiner and B. Z. Shreiner, Appellants, *v.* Mary E. Shreiner.

| 178 | 57 |
| --- | --- |
| f198 | 330 |

| 178 | 57 |
| --- | --- |
| 207 | 205 |
| 207 | ²530 |
| 178 | 57 |
| f213 | ¹137 |

*Will—Issue devisavit vel non—Testamentary capacity—Delusions.*

The existence of delusions will not destroy testamentary capacity unless they are such as dictate or substantially affect the provisions of the will itself.

Where a will is contested mainly on the ground of delusions on the part of testatrix, it is error for the court to charge that it is "necessary that a testator at the time he makes and executes his will should be possessed of a sound mind . . . . A sound mind has been defined to be a mind wholly free from delusion." Such error is not corrected by the fact that the court later in the charge stated in a general way, without any reference or caution as to the nature of the delusions testified to, that "a person whose mind is perverted by insane delusions with reference to one or many subjects, however unreasonable and absurd, may nevertheless make a valid will provided the provisions of such will are not influenced by such delusion."

On the trial of an issue devisavit vel non the evidence tended to show that the testatrix, who died in her eightieth year, had delusions as to strange people being in her house. These delusions were not in any way relevant to the making of a will. The family physician testified that at the time the will was made, which was five years before her death, testatrix was suffering from "senile dementia." There was also evidence of failure of memory as to persons, places and recent small occurrences, but not extending to any serious matter. There were also the opinions of several witnesses unlearned as to the definition of testamentary capacity that the testatrix was unfit to make a will. On the other side was the will drawn by counsel and executed in the presence of business friends called in for that purpose, with no evidence at all of want of testamentary capacity at the time of the execution, and the will itself containing clear internal evidence of recognition of her estate, and of all the persons who could be said to be the natural objects of her bounty, and finally, the continued transaction of important business for five years after the making of the will, with no suggestions of incapacity from any one. The court submitted the case to the jury, who returned a verdict setting aside the will, upon which judgment was entered. *Held,* (1) that the court should have directed a verdict sustaining the will; (2) that the judgment must be reversed and the issue set aside.

Argued May 19, 1896. Appeal, No. 147, Jan. T., 1896, by plaintiffs, from judgment of C. P. Lancaster Co., March T., 1893, No. 49, on verdict for defendant. Before Green, Williams, McCollum, Mitchell and Fell, JJ. Reversed.

Issue devisavit vel non.   Before LIVINGSTON, P. J.

Maria Shreiner, the testatrix, died on April 9, 1892, aged seventy-nine years.   Her will was written by a prominent member of the Lancaster bar, and executed by her June 30, 1887, the attesting witnesses being leading merchants of Lancaster city, who knew her well.

In her will she mentioned all of her children by name, and left the greater portion of the share of the contestant to her executors (who are also children) in trust; Mary E. Shreiner, the contestant, being a daughter, a maiden lady, who at the time of the trial was fifty-seven years of age.

The testatrix was a widow from 1879 to the time of her death. She had been engaged in business during the more active period of her life, and had accumulated a considerable estate, which she managed prudently and left as an inheritance for her children and grandchildren.

Other material facts appear by the opinion of the Supreme Court.

The court charged in part as follows :

[It is, therefore, necessary that a testator at the time he makes and executes his will should be possessed of a sound mind. And a testator of sound mind has the right to do as he deems best with his own property, to prefer one child to another, or disinherit one or more at his discretion.   The court, in such cases, will not interfere with this statutory dominion for slight causes in order to produce equality where such testator has seen fit to make inequality.   A sound mind has been defined to be a mind wholly free from delusion.] [3]

Plaintiffs' points and answers thereto among others were as follows :

11. There is no evidence of want of testamentary capacity at the time of giving instructions for the will in question or the time of the execution thereof sufficient in law to justify a verdict against said will, and the verdict of the jury on said question should be in favor of the plaintiffs.   *Answer:*  Our answer to that is, the jury have heard all the evidence with reference to the facts presented in this point, and we submit it to them to answer by their verdict. [2]

12. Under all the evidence the verdict should be in favor of

the plaintiffs.  *Answer:* That point we refuse.  The fact is for the jury, and we have no authority to decide. [1]

Defendant's point and answer thereto among others were as follows:

2. If the jury believe from all the evidence that Maria Shreiner at the time she executed the paper in issue, by reason of mental infirmity, no matter how produced, was unable to fully comprehend the nature of her act, the amount and character of her estate, and the objects of her bounty, so as to make an intelligent disposition of her property, the verdict must be in favor of the defendant.  *Answer:* That we say is true, and affirm that point. [4]

Verdict and judgment for defendant.  Plaintiffs appealed.

*Errors assigned* among others were (1–4) above instructions, quoting them.

*B. F. Davis,* with him *A. H. Fritchey* and *H. M. North* for appellants.—The evidence offered is not in our opinion so strong as that presented in Eddey's App., 109 Pa. 406, where the court refused to direct the issue.

Neither are the facts as strong as in Comb's and Harkinson's App., 105 Pa. 155.

The facts in this case are somewhat similar to Miller v. Oestrich, 157 Pa. 264.

Neither age nor sickness, nor extreme distress or debility of body will affect the capacity to make a will, if sufficient intelligence remains: Wilson v. Mitchell, 101 Pa. 495.

Partial unsoundness not affecting the general faculties and not operating on the mind of the testator in regard to the testamentary disposition, is not sufficient to make a person incapable of making a will:  Pidcock v. Potter, 68 Pa. 342; Boyer's App., 166 Pa. 630; Rodger's Est., 19 W. N. C. 383; Cauffman v. Long, 82 Pa. 72; Pensyl's App., 157 Pa. 465; Douglass' App., 162 Pa. 567; Herster v. Herster, 122 Pa. 264; Cameron's Est., 3 Dist. Rep. 101; Horne v. Horne, 9 Ired. 99.

Partial unsoundness, not affecting the general faculties and not operating on the mind of the testator in regard to testamentary disposition, is not sufficient to make a person incapable of making a will: Pidcock v. Potter, 68 Pa. 342; Smith v. Tibbitt, 36 L. J. R. (N. S.) 97; Banks v. Goodfellow, 39 L. J. R.

(N. S.) 257; Freeman v. Easly, 117 Ill. 317; Yoe v. McCord, 74 Ill. 40.

. *W. U. Hensel*, with him *J. Hay Brown* and *A. J. Eberly*, for appellee.—The exact measurement of enfeeblement from age, in the natural decay of mental powers, which disqualifies one making a will, is, of course, not to be defined by any unbending rule of law. It must be ascertained from facts of each particular case, and therefore is generally a question for a jury: 1 Williams on Executors, sec. 32; Shep. Touch. 403; Jarman on Wills, 5th Am. ed. p. 94.

A person disturbed at some particular point and under the influence of a delusion has partial insanity, and if a will is made under the influence of such a delusion, it is not the free result of a sound mind and memory and should not be admitted to probate: Cassidy on Wills, 467; Taylor v. Trich, 165 Pa. 691.

Where witnesses first testify to facts indicating an abnormal state of mind, they may give their opinion about the mental state or condition of the testator and answer generally whether he is sane or insane: Taylor v. Trich, 165 Pa. 691; Elcessor v. Elcessor, 146 Pa. 359.

OPINION BY MR. JUSTICE MITCHELL, October 5, 1896:

The third assignment of error must be sustained. The learned judge charged the jury that it was " necessary that a testator at the time he makes and executes his will should be possessed of a sound mind. . . . A sound mind has been defined to be a mind wholly free from delusion." This was a serious overstatement of the requirements as to testamentary capacity in a case where as in the present the will was contested mainly on the ground of delusions or hallucinations on the part of testatrix. It is settled that the existence of delusions will not destroy testamentary capacity unless they are such as dictate or substantially affect the provisions of the will itself: Taylor v. Trich, 165 Pa. 586, 601, 602; Thomas v. Carter, 170 Pa. 272. In the latter case the following statement of the law was approved by the present Chief Justice: " A man may be of sound mind in regard to his dealings in general, but he may be under an insane delusion, and whenever it appears that the will was the direct offspring of the partial insanity or monomania under which the testator

was laboring at the very time the will was made, that it was the moving cause of the disposition, and if it had not existed the will would have been different, it ought to be considered no will, although the general capacity of the testator may be unimpeached."

It is true that later in the charge the jury were told that "a person whose mind is perverted by insane delusion with reference to one or many subjects, however unreasonable and absurd, may nevertheless⋅ make a valid will, provided the provisions of such will are not influenced by such delusion," but the subject was committed to them in this general way, without any special reference or caution as to the nature of the delusions testified to.   Under the circumstances this was not an adequate presentation of the case, and was not sufficient to counteract the unfortunate overstatement as to testamentary capacity which had gone before.   Much testimony was undoubtedly given to show that the testatrix labored under delusions in regard to the presence of strange people in her house and climbing over the fence and up the walls.   But none of these appears ever to have led to any action on her part, except occasionally getting her family up at night to look for fancied intruders, an occurrence not entirely unknown among nervous women who are nevertheless entirely sane.   None of these delusions had any⋅tendency as matter of law, or were shown as matter of fact, to have had any bearing at all on the question of testamentary capacity or on the circumstances of the making of this will, and the jury should have been explicitly so told in answer to the plaintiff's ninth point. Failing this we cannot consider that the error complained of in the third assignment was cured by the subsequent parts of the charge.

The delusions, even if they existed as testified to, being thus irrelevant, was there, outside of them, any sufficient evidence of want of testamentary capacity?   We do not think so.   The facts established beyond question were that the testatrix was a woman of intelligence, business capacity and experience, having acquired a considerable estate by her own exertions in storekeeping; she was advanced in years but retained her position as the head of her house, though she depended to some extent on the assistance of her daughter, the contestant, who lived

with her; she gave directions for her will to her son, through whom it was drawn by counsel, submitted to her and altered somewhat by her in contestant's favor, rewritten by counsel, read by him to her in private in his own office, declared to be what she wanted, and executed by her in the presence of two reputable and entirely disinterested business acquaintances who were specially called in as witnesses. She lived five years after that, keeping her own bank account, drawing checks, collecting dividends on her stock, receiving rent from her tenant and his wife, paying the milkman and the watchman who came to her house, and from time to time making purchases at market and in stores, though usually accompanied in these outdoor transactions by her daughter, and in 1889, two years after the making of the will, joined in a conveyance of a valuable piece of real estate, and during all this time no one raised any question of her capacity, although the contestant with others of the family was a party to the deed by which the property was conveyed to the trust company, and the president of the latter had known her for years and had no hesitation in taking title from her.

Against this array of actual business transacted there was the testimony of a number of witnesses as to the testatrix's loss of memory, her failure to recognize persons, including in one or two instances her own daughter, her inability to make correct change, and her offers to some of them to pay a second time after having paid previously. The witnesses were mostly neighbors and acquaintances who did not have business transactions with her, and the things they testified to, apart from the delusions, showed little else than the ordinary forgetfulness of age, chiefly of names and faces, and not shown to extend to serious matters or business. These witnesses were allowed to give their opinions that testatrix was not fit to make a will, without having shown the slightest knowledge of what testamentary capacity requires. As to them the remarks of PAXSON, J., in Eddey's Appeal, 109 Pa. 406, 420, are entirely appropriate; " the opinions of many of them may be brushed aside as wholly worthless by reason of their lack of knowledge and judgment in such matters. A witness must know what testamentary capacity means before we can attach any weight to his testimony." The most important witness against the will was the family

physician, who testified that testatrix had had an attack of acute congestion of the brain with slight paralysis, and that in 1887, the date of the will, " her case had developed into what we call senile dementia," the evidences of which he said were " impaired memory; depression of spirits; melancholy at times; feeble mind," and " her condition was bad; she had hallucinations."     This testimony was undoubtedly entitled to weight, but, as already said, the hallucinations which medically were a large part of the dementia, were entirely irrelevant on the question of testamentary capacity, and the doctor neutralized much of the force of his testimony by the frank admission that he knew nothing at all about her business affairs, nor what she did in that way for several years after the date of the will.     As to her failure of memory, the weightiest matter testified to was her not recognizing on one or two occasions her youngest daughter, but the will itself conclusively proves that this was not the lasting state of her mind, as that daughter is named and given a share of the estate with the clear explanation that it is less than the other shares " because she is well provided for in life, and has received moneys through other sources in my lifetime." It was not shown that the testatrix's memory was in fault as to this or any other material fact relevant to her estate, and her will in regard to its distribution.

Upon the whole case we have first, delusions showing impairment of mind in some directions, but not in any way relevant to the making of a will; failure of memory as to persons, places and recent small occurrences, but not shown to extend to a single serious matter; and the opinions of a number of witnesses, most of them unlearned on the subject, that the testatrix was unfit to make a will; and secondly, on the other side, a will drawn by counsel and executed in the presence of business friends called in for that purpose, with no evidence at all of want of testamentary capacity at the time of execution, and the will itself containing clear internal evidence of recognition of her estate, and of all the persons who may be said to be the natural objects of her bounty, and finally the continued transaction of important business for five years after the making of the will, with no suggestion from any one that she was not capable of attending to it.     In the face of these actual transactions the opinions of witnesses are of very little weight.

Under such circumstances and on such testimony a jury cannot be allowed to overturn a will.

The verdict should have been directed for the plaintiffs.

Judgment reversed and issue directed to be set aside.   Costs to be paid by appellee..