## Minnig's Estate.

Submitted April 15, 1930.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*William A. Bertsch* and *P. B. Roads,* for appellants, cited: Cross's Est., 278 Pa. 170; Tetlow's Est., 269 Pa. 486; Wagner's Est., 289 Pa. 361; Wilson v. Mitchell, 101 Pa. 495; Snyder's Est., 279 Pa. 63; Phillips's Est., 244 Pa. 35; Koon's Est., 293 Pa. 465.

*M. M. Burke,* for appellee, cited: Lawrence's Est., 286 Pa. 58; Koon's Est., 293 Pa. 465; Guarantee T. & S. Dep. Co. v. Heidenreich, 290 Pa. 249; Cross's Est., 278 Pa. 170; White's Est., 262 Pa. 356.

OPINION BY MR. JUSTICE FRAZER, May 12, 1930:

Lucy Minnig died July 9, 1927, leaving a will dated March 3, 1927, in which she gave her entire estate to her brother John Minnig. The will was duly probated July 13, 1927, whereupon an appeal was taken by relatives of testatrix, and a petition filed averring that the will was obtained by undue influence exercised by the beneficiary, also that testatrix was mentally incompetent to make a will at the time the writing in question was signed, and asking that an issue be granted to the common pleas to try the questions of fact thus raised. An answer was filed denying the averments of the petition, and after hearing testimony the court below dismissed the appeal and refused an issue on the ground that the evidence of undue influence and mental incompetency was insufficient to justify a submission of the questions to a jury or to sustain a verdict against the will. From this conclusion of the court the present appeal was taken.

Contestants are nieces and nephews of decedent who had been named as beneficiaries under an earlier will made by testatrix in 1913. Decedent was eighty years of age and had lived alone for many years. In December, 1926, she became ill and her brother, who lived near her and who had apparently for many years been the only relative who frequently visited her, requested John L. Stauffer, Esq., who had been attorney for testatrix, to visit her home and endeavor to persuade her to secure a nurse owing to her feeble condition. Complying with this request, Stauffer visited testatrix and had a conversation with her in regard to the matter, and as he was about to leave the house testatrix voluntarily requested him to bring her will with him the next time he called saying she wanted to change it because it didn't suit

her. This will had been prepared by the same attorney and was given into his possession for safe keeping. On January 19, 1927, testatrix suffered a hemorrhage of the brain and was unconscious for five days. She was attended by her family physician during this time and for some time thereafter until March 4, 1927, at which time she had recovered to such extent that the physician did not call after that time. In the meantime John Minnig, the brother, had informed Stauffer that testatrix desired to make a new will, and again asked him to call on her. Before doing so, Stauffer communicated with her physician to learn whether she was mentally competent to dispose of her property, and, on being told she was, he called at her home on March 3, 1927, and conversed with her concerning the disposition she wished to make of her estate. He then wrote the will in long hand in her presence, read it over to her, and she signed it by her mark and it was witnessed by two persons, a man and wife who had been employed by testatrix to attend her and look after her affairs during her illness. Minnig, the beneficiary, was present at the time but took no part in the transaction and made no suggestion as to the disposition of the property. Both witnesses, as well as the attorney, testified testatrix was mentally competent and understood thoroughly what she was doing at the time the will was drawn and signed, and the physician, who had attended her regularly from January 19th, to March 4th, his last two calls having been the day before and the day after the execution of the will, stated that she had been improving steadily since the attack on January 19th, and was in her right mind and compe- tent to make a will and had so far recovered from her previous illness that she had told him on March 4th, that he need not call to see her any more, that she was "all right."

So far as what took place at the time of the signing of the will is concerned, there is no contradiction, since contestants called no witness who was present at that

particular time. The evidence relied on by the contestants was to the effect that, after the spell of sickness which began on January 19, 1927, testatrix was in a weakened physical condition and scarcely able to help herself and would ask "all kinds of peculiar questions"; had a poor memory in regard to her business affairs and would even at times fail to recollect her friends and relatives; would repeatedly ask the same questions, stating to a witness that she believed she was losing her mind, although the witness referred to a time a year or more before the death of testatrix; the same witness also testified that testatrix said she had made her will and that her brother John Minnig would not get a cent; as a matter of fact the will which had been in existence before the one now in question, gave all her property to nieces and nephews to the exclusion of her brother and the statement was accordingly correct at the time it was made. Taking this evidence as a whole, there is a total lack of testimony to overcome that of the attorney and witnesses to the will and the attending physician to the effect that at the time the will was executed testatrix was mentally competent to dispose of her property. The fact that the earlier will was changed and the beneficiaries named therein eliminated entirely and her brother substituted, was not an unnatural provision in view of the fact that the other relatives had little communication or association with testatrix in the later years of her life, while the brother lived in the same town and maintained cordial relations with her. The mere fact that testatrix had a weak memory did not render her incompetent to make a valid will so long as her memory was sufficient at the time to understand the nature of her property and know what disposition she desired to make of it, and as to this there is no dispute in the evidence. No evidence whatever of undue influence was produced by appellants except such as might be inferred from the mere presence of the beneficiary in the room at the time the will was signed, and the fact

that he was the nearest relative and apparently the only one who had been in constant touch with testatrix in her later years, the other relatives living in neighboring states and having had no association with her for many years. If these circumstances alone were sufficient to justify a decree setting aside a will on the ground of undue influence, a devise of property to the persons who would most naturally be the first objects of consideration on the part of a testator would be of no value.

The rule established in cases of this kind and illustrated by Cross's Est., 278 Pa. 170, and other recent decisions, is that where a substantial dispute exists on a material point of fact concerning the status of an alleged will and the evidence is of such weight as to support a verdict on either side, the court is bound to grant an issue to the common pleas on request made by an interested party in due time. But if the testimony is such that, after a fair trial, the court would feel constrained to set aside any verdict against the will as contrary to the manifest weight of the evidence, it cannot be said that a dispute has arisen, such as is necessary to require the granting of an issue to the common pleas. The present case is clearly one where the court would have been bound to set aside a verdict against the will.

The decree of the court below is affirmed at costs of appellants.