Central Trust Co., Executor, Appellant, *v.* Boyer.

Argued April 28, 1932. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*R. A. Henderson,* with him *John F. Sullivan,* for ap-
pellant.—Where testamentary capacity is unimpaired,
undue influence cannot be established by anything short
of clear, direct and convincing evidence that testator's
own mind was controlled and dominated by another:
South Side Trust Co. v. McGrew, 219 Pa. 607; Robinson
v. Robinson, 203 Pa. 400, 417; Logan's Est., 195 Pa.
282; Eble v. Fidelity T. & T. Co., 238 Pa. 585; Caughey
v. Bridenbaugh, 208 Pa. 414, 423; Phillips's Est., 244
Pa. 35, 43; Llewellyn's Est., 296 Pa. 74, 83; Mark's
Est., 298 Pa. 285, 290.

The will was not unjust: Llewellyn's Est., 296 Pa. 82; Phillips's Est., 244 Pa. 47.

The mere fact that the testator and the beneficiary in his will sustained illict relations with each other is not sufficient evidence of coercion or restraint in connection with the making of the will: Allshouse v. Kelly, 219 Pa. 652; Chidester's Est., 227 Pa. 560; Kustus v. Hager, 269 Pa. 103; Cressman's Est., 246 Pa. 291; Cauffman v. Long, 82 Pa. 72.

"Solicitations, however importunate, cannot of themselves constitute undue influence; for though these may have a constraining effect, they do not destroy the testator's power to freely dispose of his estate": Caughey v. Bridenbaugh, 208 Pa. 414, 422; Englert v. Englert, 198 Pa. 326, 331; Phillips's Est., 244 Pa. 35; Robinson v. Robinson, 203 Pa. 400.

*John J. Haberstroh,* with him *Charles M. Kurtz,* for appellee.—The word influence does not refer to any and every line of conduct capable of disposing in one's favor a fully and self-directing mind, but to a control acquired over another, which virtually destroys his free agency: Caughey v. Bridenbaugh, 208 Pa. 421; Stokes v. Miller, 10 W. N. C. 241; Miller v. Miller, 3 S. & R. 267; Zimmerman v. Zimmerman, 23 Pa. 375.

Where a person has testamentary capacity but is so weak physically or mentally as to be susceptible to undue influence, and a substantial part of his estate is left to one occupying a confidential relation to him, the burden is upon the latter to show that no improper influence controlled the making of the will: Boyd v. Boyd, 66 Pa. 283; York's Est., 185 Pa. 61; Frew v. Clarke, 80 Pa. 170; Caughey v. Bridenbaugh, 208 Pa. 414; Lawrence's Est., 286 Pa. 58; Smith's Est., 250 Pa. 67; Armor's Est., 154 Pa. 517; Adams's Est., 220 Pa. 531; Koon's Est., 293 Pa. 465; Snyder v. Erwin, 229 Pa. 644.

"The findings of a chancellor based on evidence and approved by the court below, has the weight of a verdict

of a jury, and will not be disturbed on appeal": Kern v. Smith, 290 Pa. 566; Weber v. Kline, 293 Pa. 85.

As to the conduct of Mrs. Long before and after the execution of the will, the attention of the court is directed to the case of Aggas v. Munnell, 302 Pa. 78.

We understand that a judge sitting in the trial of a feigned issue, such as we have here, is sitting as a chancellor and that the evidence is addressed to him quite as much as to the jury, but it must as a whole be judged by him independently of the jury, must satisfy his legal conscience as well as the jury, and cannot rightfully be submitted to the jury as a basis of any finding which he would not approve: Caughey v. Bridenbaugh, 208 Pa. 414; Keen's Est., 299 Pa. 430; Southside Trust Co. v. McGraw, 219 Pa. 606.

OPINION BY MR. JUSTICE DREW, May 26, 1932:

Penrose S. Boyer died testate on October 30, 1929, in his sixty-eighth year, leaving his widow, Amanda Boyer, and one son, Banks S. Boyer, the contestant, to survive him. The chief beneficiary under the will was his housekeeper, Mrs. Ida May Long, who was not related to him in any way. His son filed a caveat against probate of the will, and an issue was certified to the common pleas court for trial by jury to determine two questions: (1) Did the testator have testamentary capacity when he executed the will? and (2) Was the will procured by fraud, or duress or undue influence? At the trial, in which the executor was designated as plaintiff and the contestant as defendant, only the second question was submitted to the jury, no sufficient testimony having been offered to support a finding that the testator did not have testamentary capacity. A verdict was returned in favor of the contestant and against the will. After plaintiff's motion for judgment n. o. v. was overruled and judgment entered on the verdict, plaintiff assigned this action as error and appealed.

The testator's wife was a confirmed invalid and required the attendance of a nurse. For some time, he employed Mrs. Sadie Mateer, a practical nurse, whom he paid $7 a week. In January, 1928, he discontinued her employment, informing her that he wished to get less expensive help. He then brought into his home Mrs. Long, and paid her $12.50 a week for the same services. He had been trying for some time to get this woman, with whom he had illicit relations, to live at his house. He had visited her frequently at her apartment, by day and at night, and had taken week-end trips with her, covering periods of two or three days. Following her arrival in his home, he discontinued occupying the room with his wife. Mrs. Long took full control of the house as soon as she entered it. She was disrespectful toward Mrs. Boyer and treated her harshly, on one occasion saying, "She sits up stairs, the dirty......, she ought to be dead long ago," on another occasion calling her "an old devil." Mrs. Boyer complained of the treatment she was receiving at the hands of the housekeeper. While his father was in a hospital, Banks S. Boyer, the contestant, went to the house to call upon his mother; he testified that Mrs. Long attempted to keep him out, saying that he had no business there and that "she had my father make a will giving her everything." Mrs. Long dominated Mr. Boyer as well as his household. For example, on one occasion when Boyer was negotiating a change in his cemetery lot, Mrs. Long interfered, represented herself to the saleswoman to be Mrs. Boyer, and in a curt way said they were not interested, that she liked the lot they had, and they would make no change. Boyer said nothing and walked away. Mrs. Long made a general denial of this and all other testimony in the case which seemed to be to her disadvantage.

Mrs. Long came to Mr. Boyer's home late in January, 1928, and on February 21st following—less than four weeks thereafter—he executed this will giving all his property in trust to the Central Trust Company of

Altoona, for the support of his wife, but the amount necessary to be determined by Mrs. Long; if the wife left the homestead and made her home elsewhere all payments should cease. In other words, she was held fast under the control and domination of Mrs. Long, even to the extent of not being permitted to make her home with her son without losing the benefit of payments for her support. He then provided that in the event Mrs. Long lived with his wife and took care of her, she should have, after his wife's death, for her lifetime or as long as she remained unmarried, all of his property; at her death, any of his estate remaining was given to the two children of Mrs. Long and to his son Banks S. Boyer, designating him as his "stepson." The reason for this false reference to his son is not apparent; he is the legitimate son of testator and his wife. He authorized his executor and trustee, Central Trust Company, to sell his real estate at such time as it considered it necessary for the best interest of his estate, but provided that this could be done only with the written consent of Mrs. Long.

The testator had only seen Mrs. Long's daughter once before making his will. He did not know her son at all. Mrs. Long attempted to explain testator's bequest to her children by saying they did more for him than his own son did. All she could say in this respect was that they visited her at his house during the first weeks she was there. Her daughter contradicted her mother's testimony in this regard, stating that she did not visit the Boyer home until Mother's Day, which was in May after the execution of the will and four months after her mother had gone there.

Defendant contends that this will was really the will of Mrs. Long, and was procured by her undue influence over the testator. The record shows that the only denial of the facts upon which defendant bases his contention was made by Mrs. Long herself. Her testimony is in flat contradiction of that produced by defendant and, if believed, is irreconcilable with the existence of any un-

due influence. An issue of veracity and credibility was directly raised. The trial court, which saw and heard the witnesses, was in a far better position to determine such questions than are we, sitting as an appellate court and having before us only the lifeless words of the record. The jury decided these questions against Mrs. Long. The learned trial judge did likewise, saying, "Witnesses called upon the part of the [defendant] impressed us with the truthfulness of their statements, while Mrs. Long, against whom the attack was directed, gave anything but a favorable impression of truthfulness. . . . . . . She utterly failed to convince either the jury or the trial judge of her sincerity or truthfulness." A very careful examination of the whole record leads us to the same conclusion; her wholesale denial of any and all testimony which seemed to her disadvantage, the fact that the great weight of the testimony was against her, and that on a material point she was contradicted by her own daughter, will not permit of any other conclusion.

It is an extremely serious thing to set aside a man's last will and testament. His property is his own and he can dispose of it as he pleases, in life, and after death, by means of his will. The concern of the law is the protection of the testator and the legal objects of his bounty, to see that he has testamentary capacity and is not overreached by designing persons. To this end, in the trial of an issue to determine the validity of a will, the judge sits as a chancellor (McCormick v. McCormick, 194 Pa. 107; Roberts v. Clemens, 202 Pa. 198) ; the evidence is addressed quite as much to him as to the jury, and he cannot permit the jury to do what he, as a chancellor, would not do (Caughey v. Bridenbaugh, 208 Pa. 414; Phillips's Est., 244 Pa. 35; Keller v. Lawson, 261 Pa. 489; Fleming's Est., 265 Pa. 399; Guaranty T. & S. D. Co. v. Heidenreich, 290 Pa. 249). If he feels that the ends of justice call for a verdict against the will, or he is so uncertain on this point that he could in good conscience support a finding either way on one or more of

the controlling issues involved, the question should be submitted to a jury, and unless, on reëxamination after verdict, the evidence proves insufficient to support their finding, that conclusion should stand, even though its effect be to set aside the will (Tetlow's Est., 269 Pa. 486; Fleming's Est., 280 Pa. 252; Guaranty T. & S. D. Co. v. Heidenreich, supra; Mark's Est., 298 Pa. 285). In such a case, where the action of the chancellor is based on a consideration of the evidence, there is, in effect, a judicial determination, independent of the finding of the jury, that the verdict ought to stand, and, in the words of Mr. Justice Dean, in Robinson v. Robinson, 203 Pa. 400, "to reverse this judgment, in a stronger sense than is commonly applicable to a disappointed suitor, the laboring oar is on appellant." The question then presented to us, on appeal, is whether "in view of the relevant rules of law applicable to the particular case, is it conceivable a judicial mind—desiring only to arrive at the truth and do exact justice—could, on a due consideration of the evidence as a whole, reasonably have reached the conclusion of the court below?" Tetlow's Est., supra; Miller's Est., 288 Pa. 476; Wagner's Est., 289 Pa. 361; Llewellyn's Est., 296 Pa. 74.

The evidence in this case indicates that the testator and Mrs. Long had meretricious relations for some time prior to his bringing her to his house, and that this relationship was continued during the time she lived there, at and after the time the will was made. The verdict of the jury, concurred in by the chancellor, necessarily involved a finding to this effect. We agree that such a conclusion was fully justified by the evidence. In our opinion it is impossible to reconcile the testimony with any theory of innocence. The courts have not agreed upon a rule by which the sufficiency of circumstantial evidence of adultery may be determined. The evidence should be complete, satisfactory, and convincing, and consistent with the hypothesis that adultery was committed. If the circumstances are reasonably capable of two inter-

pretations, that interpretation which favors innocence will be adopted. In reviewing this testimony, we have followed the rule stated by Lord Stowell in Loveden v. Loveden, 2 Haggard 2. "The only general rule," said he, "that can be laid down upon the subject is that the circumstances must be such that they would lead the guarded discretion of a reasonable and just man to the conclusion of guilt." Chief Justice Gibson accepted and applied this rule in Matchin v. Matchin, 6 Pa. 332, and it has since been followed in Thomas v. Thomas, 76 Pa. Superior Ct. 54; Davis v. Davis, 91 Pa. Superior Ct. 354; Wilson v. Wilson, 100 Pa. Superior Ct. 451. Applying this test to the evidence presented at the trial, we think the testimony amply sustains the verdict, and supports the conclusion of the learned chancellor.

The mere existence of a meretricious relation between the testator and the principal beneficiary under his will does not give rise to a presumption of undue influence (Wertheimer's Est., 286 Pa. 155; Weber v. Kline, 293 Pa. 85) and, standing alone it would not support the setting aside of the will (Allshouse v. Kelly, 219 Pa. 652; Chidester's Est., 227 Pa. 560; Kustus v. Hager, 269 Pa. 103). But when such a relation is shown, and it also appears that the testator made a highly unnatural disposition of his property as a result of restraint, or domination, or any other agency which imprisoned his mind, there is sufficient evidence of undue influence, and the will should be set aside: Dean v. Negley, 41 Pa. 312; Snyder v. Erwin, 229 Pa. 644. "Unreasonable or unnatural disposition, with other evidence, may be used to prove incapacity, but, standing alone, it is insufficient. Such distribution may, however, become of the utmost importance when considering the question of undue influence to which it is more closely related." Lawrence's Est., 286 Pa. 58. "A will disinheriting a child, or children dependent, and substituting in their stead, as beneficiary, one with whom the testator sustained illicit relations, would be not only inofficious, but unnatural, and

a strong presumption would arise in such case that the testator, even though of testamentary capacity, was nevertheless in thraldom of some kind inconsistent with free agency. The more remote the degree of kinship, the feebler becomes the presumption until it reaches the point where it becomes negligible." Watmough's Est., 258 Pa. 22.

This will, made less than four weeks after Mrs. Long came into testator's home and during the course of an illicit relationship with her, is so unnatural as to be almost inhuman. The treatment of the wife is particularly harsh. At the time she was an incurable invalid, compelled to seek help to do the necessary things of life, yet her husband, the testator, discharged her faithful nurse and companion, and put in her place his paramour, and forced her to submit to this woman's indignities. His wife understood the situation and, in her helpless way, expressed indignation. The will placed her in the physical control and possession of Mrs. Long for the rest of her life. Its terms are particularly offensive and insulting. It would seem the testator did his best to shock and offend the natural objects of his bounty. When to the above considerations we add the other facts brought out by the testimony—that Mrs. Long knew the provisions of the will long before the testator's death, and that during his lifetime she exercised control and dominion over him and his household—we think that the answer to the question whether a judicial mind could reasonably have reached the conclusion of the court below must be in the affirmative.

There is no doubt that Mrs. Long knew the terms of the will before testator's death. This is shown clearly by the testimony of three witnesses. Mrs. Mateer testified that she told her that the house was hers and "everything in it, even to the old woman," which, for all practical purposes, was true under the terms of the will. Doctor Mitterling testified that the day after testator's death and before his will was read, Mrs. Long told him

"that she had everything, that he [Boyer] had left everything to her." The contestant testified that while his father was in the hospital she told him, "she had my father make a will giving her everything." Mrs. Long denied all these statements attributed to her and said that she knew nothing about the will before it was read after testator's death. Her testimony was not believed by the jury or the court below, and we find it impossible to accept.

When testamentary capacity exists, as in this case, and the will is not the result of undue influence but is the uncontrolled act of testator's own mind, it will not be set aside because of unnatural conduct in its making or unjust distribution of property. Under such circumstances, the will must stand, even though it offend every sense of propriety and justice: Phillips's Est., supra. The testator is entitled to the control of his property while living, and by will to direct its use after death: Cauffman v. Long, 82 Pa. 72.

In the instant case, however, the proof is clear and convincing (Logan's Est., 195 Pa. 282; South Side Trust Co. v. McGrew, 219 Pa. 606; Eble v. Fidelity T. & T. Co., 238 Pa. 585; Llewellyn's Est., supra, that Mrs. Long subjugated the mind of the testator, and exercised a restraint over him equal to moral coercion at the time the will was made (Smith's Est., 250 Pa. 67; Gongaware v. Donehoo, 255 Pa. 502; Wolfe's Est., 284 Pa. 169; Koons's Est., 293 Pa. 465; Keen's Est., 299 Pa. 430). This will was the result of undue influence. The facts are such that they are inconsistent with a contrary hypothesis.

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE SCHAFFER:

As this record impresses me, there was no evidence of undue influence. For this reason, and in view of our prior decisions, I dissent.