Opinion by
 

 Baldrige, J.,
 

 James Mills Duncan died May 21, 1939, at the age of 71, first having executed a holographic will dated
 
 *135
 
 August 19, 1938. This was found among the papers relating to his estate in the possession of the Farmers Trust Company, his committee, in an envelope addressed to it.
 

 The testator bequeathed small sums to his nieces and nephews, children of his deceased brothers and sisters. He gave to the Big Spring Presbyterian Church $200 in trust for the maintenance of a cemetery lot and expressed the desire that not more than $200 be used for his funeral ¡expenses. The balance of his estate, which aggregates $13,500, he bequeathed to Frank A. Diehl and Nannie Diehl Lehman, who were children of his former farmer. Prior to his commitment to the insane hospital he spent considerable time on his farm and had his own room in the tenant’s house. Neither of the residuary legatees saw Duncan after 1909, but he carried on some correspondence with them while he was in the hospital. No mention was made in the will of the testator’s sole surviving sister in whose house he was living when he died.
 

 A caveat was filed by one of the testator’s nephews against the probate of the will on the ground that the testator did not have testamentary capacity when he executed that document. The register of wills certified the record to the orphans’ court and after a hearing was had an issue devisavit vel non was granted and certified to the court of common pleas for trial. The jury found that the testator had testamentary capacity. Motions for judgment n. o. v. and a new trial were overruled. Hence this appeal.
 

 The testator, in 1908, was judicially declared a lunatic without lucid intervals, and the Farmers Trust Company of Carlisle was appointed his committee. The following year he was committed to the Harrisburg State Hospital for the Insane where he remained until April 29, 1939, when he was paroled. He then went to . the home of his sister in Newville, Cumberland County,
 
 *136
 
 where he died less than a month later, May 21,1939.
 

 This man’s history was prima facie evidence, but not conclusive of a lack of testamentary capacity. The burden, however, was upon the proponents of producing evidence to sustain the will:
 
 Titlow v. Titlow,
 
 54 Pa. 216, 224;
 
 Hoopes’ Estate,
 
 174 Pa. 373, 34 A. 603;
 
 Sterrett’s Estate,
 
 300 Pa. 116, 121, 122, 150 A. 159;
 
 Brennan’s Estate,
 
 312 Pa. 335, 339, 168 A. 25.
 

 It does not necessarily follow that one who is insane and confined to an institution is incapable of making a will. In
 
 Draper’s Estate,
 
 215 Pa. 314, 64 A. 520, the testator was in an insane asylum from 1872 until his death in 1902. His will was dated June 8, 1889. While he was free of delusion and hallucination, he suffered from mental depression. Judge Penrose in the course of his opinion, which was adopted by the Supreme Court, stated: “His commitment, in 1872, stated that he was suffering from ‘melancholia;’ but this, while, from the physicians’ point of view, affording justification, perhaps, for a certificate that the patient is ‘insane,’ is not, of itself, a necessary indication of testamentary incapacity ; and, as the records of the asylum show, it was understood that the decedent was there voluntarily, and he was kept under no restraint.” See, also,
 
 Sterrett’s Est,
 
 supra.
 

 A will should not' be declared invalid except for compelling reasons. The law is concerned with protecting the testator and the legal objects of his bounty. “His property is his own and he can dispose of it as he pleases, in life, and after death, by means of his will.”
 
 Central Trust Co., Exr. v. Boyer,
 
 308 Pa. 402, 408, 162 A. 806. If, however, there is a substantial dispute respecting the testator’s capacity to make a will, an issue must be granted:
 
 Geist’s Estate,
 
 325 Pa. 401, 191 A. 29.
 

 One may be old, infirm, suffer from physical and mental debility, have loss of memory, inability to recognize acquaintances, and incoherent speech, yet have a mind sufficiently sound to make a will:
 
 Aggas v. Mun
 
 
 *137
 

 nell et al.,
 
 302 Pa. 78, 85, 152 A. 840. The question is: Does sufficient intelligence remain to make a will?
 
 Wilson v. Mitchell,
 
 101 Pa. 495.
 

 In
 
 Sterrett’s Estate,
 
 supra, Miss Sterrett was 78 years of age, had been living in a hospital for mental and nervous diseases for 30 years, and was found to be a lunatic in 1906 when a guardian was appointed for her. One of the questions before the court on a declaratory judgment was whether or not she was capable of executing a valid will. The court p. 122, quoted with approval from Smoot’s Law of Insanity, p. 390, §461, as follows: “ ‘That a person has been adjudged incompetent from a mental derangement ...... is not necessarily conclusive of his competency to make a will, [and] it is generally held that the fact that a person making a will is under guardianship will not be conclusive of his testamentary incapacity.......The will might have been made during a lucid interval, even where the insanity entirely clouds the mind for the time [citing
 
 Titlow v. Titlow,
 
 54 Pa. 216, 224]. This is true even where the testator is confined in an asylum, where the insanity is not [specifically] shown to have affected his testamentary capacity.’ ”
 

 The evidence principally relied upon by the proponents to show a testamentary capacity was that given by Dr. Petree. He testified that he became connected with the Harrisburg State Hospital in 1930, and since 1938 has been first assistant to the superintendent. The testator came under his care originally in 1930 and until 1935 he saw him twice daily. Thereafter, until the testator was paroled, he saw him a couple times a week. He stated that the testator had dementia praecox or schizophrenia of a paranoid type, but although he was mentally affected he had an intelligence quotient of 106, which was above normal; that he possessed good memory, had ability to carry on ordinary business matters, understood the value of money, had a capacity of knowing the extent of his estate, who his
 
 *138
 
 relatives were, and who the objects of his bounty should be; that he understood thoroughly what he was doing when he wrote a will and knew the effect of a will. The witness in conclusion expressed the opinion that while the testator exhibited poor judgment in some instances, he had intellectual capacity to make a will.
 

 Dr. J. S. Hammers, who never saw Duncan, was called by the contestants. He agreed with Dr. Petree’s diagnosis of testator’s mental condition, but he was of the opinion, based only upon facts given by Dr. Petree, that he had delusions and while he had knowledge, his intelligence was affected by a diseased mind. In his judgment the testator “knew, what he was doing” but his “intelligence was missing” and therefore did not have testamentary capacity.
 

 The appellant contends that the testator was a victim of delusions which affected his ability to make a valid will, as he entertained the view that his immediate relatives were not kind and ill treated him, notwithstanding the fact that his sister visited him in the hospital, took him baskets of fruit, and generally was quite attentive. The blood relationship and the attentions bestowed by the sister upon her brother were matters of importance, but not of controlling, consideration in determining' the issues before the court.
 

 Delusions will not destroy testamentary capacity unless they dictate or substantially affect the provisions of the will. In
 
 Power v. Overholt,
 
 257 Pa. 254, 259, 101 A. 733, the court said: “It was clearly the province of the jury, under all the evidence, to determine whether there was, in fact, a delusion, and whether it was present in and operative upon the mind of the testatrix, when the will in controversy was made.” See, also,
 
 Shreiner et al. v. Shreiner,
 
 178 Pa. 57, 35 A. 974;
 
 Guarantee Trust & Safe Deposit Co., Guardian v. Heidenreich et al.,
 
 290 Pa. 249, 257, 138 A. 764; 68 C. J. 432, §29.
 

 The appellant argues further that there was no evidence warranting the conclusion that the testator had
 
 *139
 
 full knowledge of the property he possessed. Actual knowledge of all the property one has is not essential. It is sufficient if the testator understands the nature of his possessions, is capable of recollecting the property he is about to bequeath and devise to the persons and objects he desires to participate in his bounty, and. if his mind and memory are sufficiently sound to enable him to know and understand the business in which he is engaged at the time he executes the will:
 
 Wilson v. Mitchell,
 
 supra;
 
 Alexander’s Estate,
 
 206 Pa. 47, 55, 55 A. 797;
 
 Snyder’s Estate,
 
 279 Pa. 63, 73, 123 A. 663;
 
 Minnig’s Estate,
 
 300 Pa. 435, 438, 150 A. 626;
 
 Revercomb’s Estate,
 
 315 Pa. 424, 172 A. 850.
 

 Dr. Petree said that he did not know whether the attitude toward his sister was a delusion as he was not sure the testator had full knowledge of her efforts to have him released from the hospital. A substantial dispute having been raised by the evidence it was for the jury to determine whether or not the testator had testamentary capacity. We are of the opinion, therefore, that the court did not err in refusing to hold as a matter of law that the will was invalid due to alleged delusions entertained by the testator.
 

 The further complaint is that the court failed to state to the jury, at the request of the contestants, that the burden was on the proponents to establish testamentary capacity by evidence of a “most unexceptionable kind and character.” In
 
 Hoopes’ Estate,
 
 supra, p. 376, cited by the appellant, the lower court said: “While the evidence to establish any fact, condition or proposition must be satisfactory and convincing to the tribunal called upon to determine it, the character of the proof required necessarily varies according to the circumstances surrounding the case or the questions involved.” In that case the testator, five years béfore the execution of his will, had been adjudged a lunatic. He made the attorney who drew the will and the two witnesses thereto legatees, but nothing was given to his relatives. The
 
 *140
 
 attorney had known the testator for less than a month. Because of the age, insanity, and confidential relation between the lawyer and the testator, the lower court held that the burden was on the proponents to establish testamentary capacity, under such circumstances, by evidence of a “most exceptional kind and character,” citing
 
 Harden v. Hays,
 
 9 Pa. 151. The opinion of the court below was affirmed by the Supreme Court in a per curiam. We find nothing in this case which requires the application of such a stringent rule.
 

 Judgment of the court below is affirmed.