# The Safe Deposit and Trust Company of Pittsburg *v.* Lange, Appellant.

*Will—Issue devisavit vel non—Lunacy—Partial insanity—Delusion—Delusion as to paternity of child.*

On an issue devisavit vel non the question was whether testator's will was the product of an insane delusion respecting the fidelity of his wife and his paternity of her child. The delusion existed for seventeen years prior to testator's death, and covered two periods, in the second of which the will was executed. During the first period there was not the slightest evidence of the existence of any fact or circumstance upon which the testator could, as a rational man, have entertained a belief that his wife had been unfaithful, and that her child was not his son. During the second period there was evidence for the consideration of the jury that what they found to have been a delusion might have been a well-grounded belief in his mind of the infidelity of his wife during the last six or seven years of his life. The testimony showed that testator imagined that a crowd was pursuing him to poison him and get possession of his property; that his wife and her friends were members of it, that his son was a spy for them, and that poison was being administered to him through keyholes, over transoms, through cracks in the wall, and in various other ways. The court refused an offer of the proponents to prove that the attorney for the testator had advised the prosecution of a man for alleged misconduct with testator's wife. The court submitted the whole case to the jury with the instruction that if the delusion did not control testator in making his will there could not be a verdict against it. *Held,* (1) that the offer of evidence as to the attorney's advice was properly excluded, as the mere giving of the advice could not possibly have aided the jury in determining what was the condition of testator's mind; (2) that the case was properly submitted to the jury, and that a verdict and judgment against the will should be sustained.

Where, long prior to the execution of his will, a delusion existed in the mind of a testator as to the faithfulness of his wife and the paternity of his child, with no facts to justify it as a belief, but subsequently and still prior to the execution of the will, such facts develop as might justify what was before a delusion as a belief, the question whether the delusion existed and was operative in the making of the will is for the jury.

Argued Oct. 26, 1903. Appeal, No. 3, Oct. T., 1903, by defendants, from judgment of C. P. No. 3, Allegheny Co., May T., 1902, No. 468, on verdict for plaintiff in case of The Safe Deposit and Trust Company of Pittsburg, Guardian of Herman George Adolph Kauffeld, v. Elias Lange et al. Be-

fore MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Issue devisavit vel non. Before EVANS, J.

In addition to the facts stated in the opinion of the Supreme Court it appeared that the will in controversy was executed on January 29, 1900, three days before testator's death. Testator married in 1882. Plaintiff was born in 1883, and testator and his wife separated in 1885. The estate amounted to about $25,000. The will provided as follows : " My wife Emma Kauffeld shall have such dower in my estate as the intestate laws of the state of Pennsylvania give to her.

" To George Adolph Kauffeld of Pittsburg, Pennsylvania, I give and bequeath the sum of $2,500."

He gave the remainder of his estate to relatives.

The court excluded offers proved by various witnesses who had had business relations with the decedent that they did not observe anything from decedent's conversation or conduct which led them to think that he was of unsound mind. [10–15]

The court also excluded offers to prove declarations of the testator as to his intentions to provide by will for certain of the defendants. [7, 8, 9]

The court charged in part as follows :

[This case comes into this court for trial from proceedings commenced in the orphans' court of this county contesting the validity of the will of Elias Kauffeld; and the orphans' court of this county certified to this court a question of fact which question of fact I submit to you for your determination. That question is this : Whether at the time of the alleged execution of the paper-writing dated January 29, 1900, purporting to be the last will and testament of Elias Kauffeld, deceased, he, the said Elias Kauffeld, was of sound and disposing mind, memory and understanding. That is the question of fact for you to determine in this case and is the only question of fact submitted to you.

If you find the affirmative of that fact, namely, that he was of sound mind, memory and understanding, then you should sustain the paper which he executed at that date as his last will and testament, and find your verdict for the defendants in this case,

If you find the negative of that fact, namely, that he was not of sound mind, memory and understanding, then your verdict should be for the plaintiff in this case; because if he was not of sound mind at that time, then he could not execute as his last will and testament any paper, and the paper which he intended to be his last will and testament is not in law his last will and testament.] [1]

[Now, the first of these alleged delusions, namely, that he was being pursued by imaginary enemies and in grotesque and fanciful ways for the purpose of poisoning him, if it was an insane delusion, might not affect the making of his will unless it controlled his act in some way in the disposition of his property. But outside of that, it has a value to you in the testimony to this extent, that if it is evidence of a delusion at all, it is evidence to determine the question as to whether the other alleged delusions, namely, the infidelity of his wife and the illegitimacy of his son, were founded upon fact or upon reasonable evidence or not.] [2]

[The important question for you to determine in this case will be, was the belief that his son was illegitimate a delusion such as I have defined to you, or was it founded either upon fact or upon such evidence as would justify an ordinarily rational mind in believing it, or, at least, in having doubts on the subject, which you find from the testimony that he had. That is the important test, I think, in this case. If his belief in his son's illegitimacy was a pure figment of the imagination, neither based upon facts nor upon extrinsic evidence, then it was an insane delusion, and such an insane delusion as, if it existed at the time that he executed this paper, would strike it down as a will; because the child is the natural object of the parent's bounty, and where you find that a child has been disinherited, or practically disinherited, you naturally make inquiry as to the cause, and if that cause be an insane delusion, then it was the delusion that disinherited the child and not the rational reasoning powers of the man.] [3]

The court refused binding instructions for defendants. [2]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–4) above instructions, quoting them; (5–15) rulings on evidence, quoting the bill of exceptions.

*D. F. Patterson*, with him *Harry I., Goehring, Edward B. Goehring* and *George B. Parker*, for appellants, cited on the question of partial insanity: Shaver v. McCarthy, 110 Pa. 339; Wilson v. Mitchell, 101 Pa. 495; Grubbs v. McDonald, 91 Pa. 236; Taylor v. Trich, 165 Pa. 586; Shreiner v. Shreiner, 178 Pa. 57; Cauffman v. Long, 82 Pa. 72; Bennett's Est., 201 Pa. 485; Roberts v. Clemens, 202 Pa. 198.

*Morton Hunter*, with him *H. L. King*, for appellee, cited: Thomas v. Carter, 170 Pa. 272.

OPINION BY MR. JUSTICE BROWN, January 4, 1904:

In this issue devisavit vel non over a paper purporting to be the last will and testament of Elias Kauffeld, " the case," as is frankly stated by the learned counsel for appellants, " was sent to the jury on the question whether his will was the product of an insane delusion respecting the fidelity of his wife and his paternity of her child." They found that such delusion had existed in the mind of the testator and resulted in his will, by which he left his son and only child—but not so recognized by him—only one tenth of his estate.

The delusion of the testator extended from 1883 until he executed his will on January 29, 1900, three days before his death, and, for a proper consideration of this case, must be regarded as covering two periods. During the first there was not the slightest evidence of the existence of any fact or circumstance upon which he could, as a rational man, have entertained a belief that his wife had been unfaithful, and that her child was not his son. During the second, beginning the latter part of 1893 or early in 1894, and extending to the time of his death, there was evidence for the consideration of the jury that what they found to have been a delusion might have been a well grounded belief in his mind of the infidelity of his wife during the last six or seven years of his life. The question for their consideration was as to the delusion at the end of the second period, when he made his will; for, if it did not exist then, was not relevant to the making of his will and did not control him in disposing of his property, his testamentary dis' position of it cannot be interfered with: Taylor v. Trich, 165 Pa. 586; Shreiner v. Shreiner, 178 Pa. 57. Without the existence of

such controlling delusion at that time, his will was supreme; but as an aid to them in determining whether it had been induced by delusion, or resulted from a belief, justified under the circumstances, the jury were very properly allowed to know that what the appellants contended was a rational belief by the testator from 1893 to 1900, resulting from and justified by extrinsic evidence, had years before clearly been the insane conception of the diseased mind of the husband and father. In the end it may have been a belief justified by the facts and circumstances upon which the appellants rely, but this was for the jury. If they had found that such belief existed in the mind of the testator, even though as a matter of fact a mistaken one, his will could not have been disturbed. The instructions as to this were correct and sufficiently explicit.

The testator was married in May, 1882. In September, 1883, the child, Herman George Adolph, was born. The husband manifested affection for the baby for a short time, spoke proudly of him as his son and asked friends to come and see him. In the return of the birth to the board of health, filled up by himself, he acknowledged the child as his own. In three or four months, however, he unmistakably showed by his conduct that he doubted his paternity of it. He would stand before a mirror and compare his face in it with that in the cradle, and, finally, when the child was about fourteen months old, flatly denied that he was its father. He persisted in this denial until he separated from his wife in 1885, and, after their separation, persistently repudiated the child as his offspring. Before, as well as after the separation, to the assurances of reasoning friends that he was wronging his wife, he turned a deaf ear. In the end, when dictating his will to his lawyer, his words were: " To George Adolph Herman Kauffeld, $2,500. I will not call him my son."

As stated, nothing was shown down to 1894 that could have justified the testator's suspicion of his wife's infidelity, and a jury could not have been impanelled which, under the evidence in the case, would not have found him the victim of a pure delusion during that period. The appellants offered testimony to show that the conduct of the wife during 1893 was such as to create a rational belief in the husband's mind that she was unfaithful to him at that time; but such a belief, as the result of

what was proved then, could not have existed before ; and what was proved to have occurred ten years after the birth of the child cannot be regarded as justifying the father's suspicions about it three months after it was born. Though the delusion started as the imagining of a diseased mind, it might later on have became a rational belief, resulting from facts and circumstances that did not exist in the beginning, and the testimony as to the alleged misconduct of the wife was for the jury's consideration in determining whether the delusion had continued as such, or had been succeeded by a well grounded belief. It was for them to say, from all that was submitted to them, whether, at the end, when the testator said to his attorney, about to draw his will, " I will not call him my son," he was controlled by a delusion, or acting from what, as a rational man, he was warranted in believing. They may have thought, and probably did think, that the only effect on the decedent of the information brought to him about the conduct of his wife years after the birth of the child was to intensify the continuing delusion ; or they may have concluded that what had been communicated to him ought not to have led him, as a rational man, into the belief of his wife's infidelity. The testimony as to what had been told him might have had either of these effects on the mind of the jury. They could very properly have found, as they did find, that, in the end, the same vain delusion controlled him as had led him to suspect the legitimacy of his child, born to him by his wife at a time when he had no reason to believe she had given birth to a bastard. Under the evidence, the question of delusion was clearly for the jury, and, having reviewed it here with care, we have been persuaded that it was sufficient to sustain the verdict.

There are no assignments relating to the admission of testimony, and we need not, therefore, determine whether the evidence of the other delusion of the testator ought to have been excluded or withdrawn from the jury. He imagined that a crowd was pursuing him to poison him and get possession of his property ; that his wife and her friends were members of it ; that his son was a spy for them ; that poison was being administered to him through the keyholes, over transoms, through cracks in the wall and in various other ways. From this delusion, though not in itself one upon which the contestants

might have relied as a reason for attacking the will, the jury might very naturally have concluded that the testator was a subject of delusions relating to his wife and child, instead of a rational man, acting from a belief for which he had reason. Of this the learned trial judge very properly said : " Now, the first of these alleged delusions, namely, that he was being pursued by imaginary enemies and in grotesque and fanciful ways for the purpose of poisoning him, if it was an insane delusion, might not affect the making of his will unless it controlled his act in some way in the disposition of his property. But outside of that, it has a value to you in the testimony to this extent, that if it is evidence of a delusion at all, it is evidence to determine the question as to whether the other alleged delusions, namely, the infidelity of his wife and the illegitimacy of his son, were founded upon fact or upon reasonable evidence or not."

The extract from the charge, which is the subject of the fourth assignment, so far as it relates to the delusion of the testator, must be read in connection with the distinct statement by the learned trial judge that if the delusion did not control him in making his will, there could not be a verdict against it. In Thomas v. Carter, 170 Pa. 272, we approved the following as a correct instruction : " The wife and children of a man are the natural objects of his affections, and where they are disinherited by a husband and a father, when he comes to dispose of his estate, the reasons for doing so are a proper subject to enter into the consideration of a jury in considering a case like the present, and any person will naturally inquire, why was this thing done ? Was the testator under an insane delusion, or has some powerful cause induced him to act thus ? " This is substantially what the court said to the jury here.

There was an offer to prove that S. W. Cunningham, Esq., attorney for the testator, had advised the prosecution of Marion Clark on the charge of adultery with Mrs. Kauffeld. This was excluded, and manifestly for the reason that it was nothing more than an offer to prove that, from information which had been imparted to Kauffeld, his lawyer thought there ought to be a prosecution. This advice was given to a man either deluded or acting rationally, and the mere giving of it could not possibly have aided the jury in determining what was the condition of

his mind.   He would have been as apt to follow it in one condition as in the other.   The opinion of the same attorney, that Clark ought to have been convicted on the second trial, as he had been on the first, is open to the same objection, for, deluded or not, Kauffeld would have accepted it as the judgment of a wise man; but it would have been of no use to the jury.   The fifth and sixth assignments are not sustained.

The excluded offers which are the subjects of the remaining assignments could have thrown no light on what was the narrow question for the jury's consideration—the partial insanity of the decedent.   They were told by the trial judge that there was no allegation that he was generally insane, but, on the contrary, their attention was directed to the fact that there was no evidence that, in ordinary business matters, he had not been a man of intelligence, and had not conducted his business with ordinary shrewdness and capability.   Nothing more need be said in overruling these last assignments.

Judgment affirmed.