## Thomas, Appellant, v. Thomas.

*Divorce—Adultery—Evidence—Insufficiency.*

A libel in divorce on the ground of adultery is properly dismissed, where the only evidence produced was to the effect that the respondent and another man were discovered together in the libellant's house at midnight, but the testimony does not justify a conclusion that the respondent and the person named were guilty of the offense charged in the libel.

Argued November 16, 1920. Appeal, No. 325, Oct. T., 1920, by libellant, from judgment of C. P. Chester County, Aug. T., 1919, No. 86, dismissing libel in divorce in the case of Joseph H. Thomas, Jr., v. Hannah K. Thomas. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Libel in divorce. Before HAUSE, J.

The case was referred to John Haviland, Esq., as master, who recommended the refusal of a divorce, in a report which, in part was as follows:

The libellant sets forth in the libel as the ground for the granting of a divorce, that the respondent in February, 1919, committed adultery with one John Shocknesy and in support of the allegation of adultery, the libellant testified that on the night of February 11, 1919, on returning to his home in Marple Township, about midnight he found the doors of the house locked and the lights extinguished and before trying the door the libellant passed the kitchen window of his home and as he passed the window he heard whispering within the kitchen. The libellant could not tell what the voices were saying. He knocked at the kitchen door after trying to open it, but found it locked, and he said, "If you don't open the door I'll bust it in." The respondent who was within the kitchen made no reply and after considerable delay opened the door. When the libellant

stepped into the kitchen the respondent immediately volunteered the statement—"There is no one here." The libellant immediately lighted the lamp and found a bed made behind the stove with the settee and three chairs. The bed was covered with coats, quilts and two bedroom pillows brought down from a bedroom upstairs. The respondent repeated to the libellant that no one had been in the kitchen with her and the libellant then announced that he would find out whether any one had been with the respondent on the bed behind the stove. The libellant then went upstairs and found John Shocknesy fully dressed wearing all his clothes including shoes, lying in a bed in a bedroom on the second floor of the house occupying the bed with the respondent's son Richard Thomas. The libellant further testified that he immediately left his home and spent the remainder of the night at the home of Charles Gorman in the neighborhood and never resumed the marital relations with his wife nor returned to his home.

The libellant also called as a witness Theobald Long whose testimony briefly stated, was to the effect that on the night of February 11, 1919, he saw John Shocknesy at the home of the libellant and that Shocknesy left the libellant's house about nine or ten o'clock shortly before the witness himself left the libellant's house and that the respondent and her son Richard Thomas were at home that night.

Counsel for the libellant urges that the facts as hereinbefore set forth and contained in the deposition of the libellant is sufficient to warrant the granting of a divorce on the ground of adultery and urges in support of his contention the decision of the Superior Court of Pennsylvania in the case of Hilden v. Hilden, 66 Pa. Superior Ct. 378, and the case of Matchin v. Matchin, 6 Pa. 332, quoting at 338 the language of Lord Stowell in the English case of Loveden v. Loveden, 2 Haggard 2. A careful examination of the case of Hilden v. Hilden, supra, shows that the facts in the case before the master are

not analogous to the facts in Hilden v. Hilden. In that case the wife at midnight visited the lodgings of a man where she remained for over an hour. This visit followed an immoral conversation between the parties. The visit of the wife was not to the house of the libellant but to his lodgings in a boarding place where for over an hour she occupied the same room with her companion. In the case before the master there was no proof either positive or, as the master views it circumstantial, which placed Shocknesy in the kitchen of the Thomas home or occupying the settee with Mrs. Thomas, the respondent. The libellant as he passed the kitchen window heard whisperings. In his deposition he does not undertake to say what the whispered words were nor who were the parties engaging in the whispered conversation alleged by the husband to have occurred in the kitchen as he approached the kitchen door. Upon entering the kitchen he found no one occupying it but his wife. He went to the second floor of his house and finds Shocknesy fully dressed, even with his shoes on in bed with the libellant's son Richard Thomas. The libellant testified to no admission of guilt made by either Shocknesy or the respondent upon the night of February 11, 1919, nor did he produce his son Richard to testify as to the length of time Shocknesy had been in bed with him before the entry of the libellant into the son's bedroom. No wearing apparel or other indicia of Shocknesy's presence in the kitchen or on the settee in the kitchen behind the stove at the time the libellant was passing the window or was waiting at the kitchen door for admission was offered in evidence and the case developed by the libellant, briefly summarized, is, that the husband upon approaching the kitchen door on the night of February 11, 1919, heard whispering voices in the kitchen. He was delayed briefly at the kitchen door in seeking admission and when he entered he found the kitchen in darkness and apparently a bed-like arrangement behind the kitchen stove and upon ascending to the second floor of the house

he found John Shocknesy fully dressed, in bed with his son Richard Thomas. In the absence of evidence placing Shocknesy in the kitchen with the respondent or a party to the whispering or other conduct calculated to show the existence of an improper relation existing between Shocknesy and the respondent upon the night of February 11, 1919, the master cannot find such circumstances or conditions as would give rise to the presumption of adultery, since the facts in the case before the master are not similar or analogous to the facts in Hilton v. Hilton relied on by counsel for the libellant. With respect the case of Matchin v. Matchin also cited by counsel for the libellant, the question involved related to the insanity of a wife and her confession of the commission of adultery and does not throw any light upon the issue now before the master. The language of Lord Stowell in Loveden v. Loveden, supra, cited by counsel for the libellant, is undoubtedly a succinct statement of the nature of the evidence required to sustain a charge of adultery and it is conceded that adultery being an offense committed in secret is seldom susceptible to proof except by circumstances which, however, are sufficient to establish the charge whenever they would lead the guarded discretion of a reasonable and just man to the conclusion of guilt. Applying this test to the facts established by the depositions, can it be said that the guarded discretion of a mind endeavoring to judicially weigh and consider the probabilities, can reach a conclusion that adultery was committed by the respondent and Shocknesy on the night of February 11, 1919?

The master is also of the opinion that even if the facts set forth in the testimony of the libellant were of a nature to justify the granting of a decree it would be necessary under the decision of the Superior Court in the case of Paul v. Paul, 72 Pa. Superior Ct. 70, for libellant to present more than his evidence unsupported by corroborating circumstances to warrant the granting of a decree.

The master recommends to the court the refusal of the prayer of the libellant.

On exceptions to the master's report the court dis-missed the exceptions and refused the prayer of the libel-lant. Libellant appealed.

*W. S. Harris*, for appellant.

No appearance and no printed brief for appellee.

PER CURIAM, March 5, 1921:

The decree from which this appeal is taken is sup-ported by a very careful, painstaking report by a master, who recommended the refusal of the prayer of the libel-lant, followed by an examination of all the testimony by the court below, and a dismissal of the exceptions filed to the master's report, affirming his recommendation.

After another examination of the whole record by this court the decree entered by the court below is affirmed.