Tasker's Estate.

205
207

455
288

*Wills—Issue devisavit vel non—Testamentary capacity—Intemperance
—Evidence—Refusal of issue.*

An issue devisavit vel non on the ground of lack of testamentary ca-
pacity is properly refused by the orphans' court, where it appears from
the overwhelming weight of all the evidence that the testator, although a
man of intemperate habits, was at the time he gave instructions to his coun-
sel as to the terms of his will, and also at the time of the execution of the
will, perfectly sober and sane, and that he understood exactly what he
was doing.

Argued Jan. 14, 1903.   Appeal, No. 147, Jan. T., 1902, by
Charles P. Tasker, from decree of O. C. Phila. Co., Oct. T.,
1900, No. 306, dismissing appeal from register of wills in estate
of P. M. Tasker, deceased.   Before MITCHELL, DEAN, FELL,
BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Appeal from register of wills.

HANNA, P. J., filed the following opinion:

RICE, P. J., in Seiler's Est., 14 Pa. Superior Ct. 504, following
many decided cases upon the subject, said : " It has been held re-
peatedly that in determining whether or not there is such a dis-
pute as should be submitted to and passed upon by a jury, it is
the duty of the court to consider all the pertinent evidence."
This rule is again announced and reiterated by the Supreme
Court is the latest decisions of that tribunal.

In Schusler's Est., 198 Pa. 81, where it was alleged the tes-
tator did not possess testamentary capacity, by reason of his
long-continued excessive use of intoxicating liquors and drunk-
enness almost all the time for a year prior to his death, the or-
phans' court of Allegheny county considered the evidence pro-
duced by the contestants, supplemented by that of the appellee,
and found that when not intoxicated the testator had testa-
mentary capacity, and was not intoxicated when he executed
the will.   They therefore dismissed the appeal.   This was
affirmed by Supreme Court.

Again, in Masson's Est., 198 Pa. 636, an issue to determine
the genuineness of the signature of testator to his will, alleged

to be a forgery, was refused by this court upon the preponderating testimony of the proponents' witnesses that the signature was that of the testator. This was also affirmed by the Supreme Court.

And see also Englert v. Englert, 198 Pa. 326, and Friend's Estate, 198 Pa. 363.

It is therefore well settled that the entire testimony is to be considered in determining the propriety of granting an issue whether it be to determine the question of testamentary capacity or the exercise of undue influence. Even then the rule also firmly established is to be applied, and it is quoted by RICE, P. J., in Seiler's Est., supra, and repeatedly followed by this court, viz : " If the testimony be such that after a fair and impartial trial, resulting in a verdict against the proponents of the alleged will, the trial judge, after a careful review of all the testimony, would feel constrained to set aside the verdict as contrary to the manifest weight of the evidence, it cannot be said that a dispute within the meaning of the act has arisen. On the other hand, if the state of the evidence is such that the judge would not feel constrained to set aside the verdict, the dispute should be considered substantial and an issue should be directed. This simple and only safe test is supported alike by reason and authority."

In applying these rules for our guidance in the present case, it is first to be said that with regard to the allegation that in the execution of the will the testator was improperly and unduly influenced, there is not a scintilla. Being unmarried and without issue, it is most natural he should select his grandnephew, who appeared to be worthy, intelligent and reputable in every respect, as the principal object of his bounty. He is his namesake and testator was evidently much attached to him and had contributed towards his maintenance and education. There is not the slightest proof that any request or solicitation was made by any person to testator that a gift should be made by him for his or her benefit except that by a sister of testator, (and, strange to say, a witness for the contestant and called to prove the mental unsoundness of her brother,) who requested his attorney, whom she knew was preparing his will, to recommend her brother to provide for her and her kindred. This is not consistent with the effort of the witness to cast a doubt

upon the testamentary capacity of her brother. And as confirmation of the power of testator's mind to discriminate and select the objects of his bounty, he complied with some of the requests of his sister and refused others.

There was no secrecy attending either the preparation or execution of the will. His intention was known to the persons composing his household. He gave instructions for its preparation to his counsel many days prior to its final engrossing and execution in the privacy of his room. And at its execution no one was present but his counsel, his assistant, well known to and familiarly greeted by testator, his attending physician, and the subscribing witnesses, both disinterested and strangers to testator until that moment, when they were formally introduced to and recognized by him as the persons who were to witness the execution of his will. The testamentary paper was previously read to testator by his counsel, whose clerk was present at the time, and testator expressed his entire satisfaction therewith.

That he was not intoxicated at the time and had full knowledge of the testamentary act in which he was then engaged are clearly shown. All the facts and circumstances connected with the preparation and execution of the will strikingly resemble those shown in the case of Wainwright's Appeal, 89 Pa. 220. The allegation of undue influence need not be further discussed, nor was it urged by counsel.

The great effort was to show such a state of facts as would justify the granting of an issue to determine the mental capacity of testator and his ability to intelligently dispose of his estate. A careful examination of the entire testimony negatives the thought. The testator had long been engaged in active business, and continued his attention to his investments and business, being a member of a copartnership, down to the day of his death. He had, until a few years prior to his death, been temperate and abstemious, careful and cleanly in his person, dress and language, and then began to be the reverse. He used intoxicating liquors to excess until he undermined his health and caused the disease which eventually terminated in his death, and became filthy in his personal habits and language. Still he was able to attend to his business and conversed about its affairs until within a few hours of his death. He was also

able to consult his counsel aad give him instructions relative
to the disposition of his estate and continuance of his firm's
business after his death.    And not only this, but also to provide
for the consumption of his remains by fire, rather than burial
in the earth, even against the objections of his counsel and the
contrary sentiment of his near relatives.    But these were un-
availing, and the testator insisted upon his own wish being
carried out.    The will itself, by its careful provisions for the
benefit of those whom testator selected as recipients of his
bounty, speaks forcibly of his entire testamentary capacity.
And, as shown in Schusler's Est., supra, to warrant an issue
upon the ground of intoxication, it must be proved that this
was the condition of the testator at the time he executed his
will.    See also Probst's Will, 2 Lanc. 97, Hannum v. Wor-
rall, 2 Del. 49, Weisman's Est., 5 Pa C. C. Rep. 561, and Fow's
Est., 147 Pa. 264.

The testimony is overwhelming that testator well understood
the nature of the act in which he was engaged, not only when
he gave the instructions to his counsel but at the time he
affixed his trembling hand and assisted signature to the testa-
mentary paper.    That he possessed sufficient intelligence to
comprehend what he was doing is also evident from his jocular
remark that his will being executed the next "is the under-
taker."    All the witnesses present at the execution, every one
disinterested, unite in the opinion that testator evinced an in-
telligent comprehension of his act and was fully competent to
dispose of his property.    This was the testimony of the attend-
ing physician who was also the medical attendant upon the
sister of testator, and at whose request he became the physician
of testator, and whose testimony is attempted to be overcome
by that of another physician, not in attendance upon testator,
who related declarations by the attending physician tending to
discredit his testimony but which were not only solemnly denied
by him but which are wholly uncorroborated and incredible.
The testimony of this blatant witness who by his rudeness and
impertinence, over anxiety to blacken the character of a rep-
utable physician, and display of personal animosity towards
him in a matter of no personal interest to himself, may well be
disregarded and safely said to have no weight whatever.

Expert witnesses were also produced by the contestants.

They are distinguished and eminent in their profession. But they testified not from any knowledge of testator but from hearing portions of testimony for the contestants, and a supposititous state of facts presented. They were careful, cautious and guarded in the expression of opinion, and it is difficult to gather that if they had seen and conversed with the testator within forty-eight hours of his death they would have considered him totally incapable of executing a will.

Opposed to this is the testimony of those who were actually present at the drafting of the will, its engrossing and submission to testator, heard his assent to its provisions, saw him affix his signature thereto, listened to his remarks and conversation and had cognizance of his mental and physical condition both previous to, at the time of the execution of the will and subsequent thereto. Such testimony is entitled to far greater belief and reliance. And it is a noteworthy fact the contestant did not venture to be a witness in his own behalf.

In conclusion, it need only be said, adopting the language of PAXSON, Justice, in Cauffman v. Long, 82 Pa. 72, " A man's will, the most solemn instrument he can execute, shall not be set aside without any sufficient evidence to impeach it." And being of opinion the evidence, if submitted to a jury, would not justify a verdict against the will, the issues prayed for are refused, the petition dismissed and the action of the register in admitting the will to probate affirmed. The contestant to pay the costs.

*Error assigned* was the decree of the court.

*Charles E Aull*, with him *George W. Boyer*, for appellant.

*C. Berkley Taylor* and *John G. Johnson*, for appellee, were not heard.

PER CURIAM, May 4, 1903:

This decree is affirmed on the opinion of the president judge of the court below, costs to be paid by the appellant.