# Crick, Appellant, *v.* Paull et al.

*Appeals—Equity—Findings of master—Evidence—Immaterial ruling—Harmless error.*

1. The findings of a chancellor are entitled to the weight of a jury's verdict, and, where supported by evidence, though in dispute, are controlling in the appellate court; and this is particularly so where the case depends on the testimony of witnesses whose credibility must be weighed and passed upon.

2. If there is no testimony to justify the conclusions reached, or, if dependent only on inferences to be drawn from proven facts, the determination will be considered on appeal as if the matter were presented de novo.

3. If resting on the weight to be allowed to the narratives of those testifying, the trial judge is in better position to reach a proper judgment, and his finding will be given conclusive force.

4. In passing upon the correctness of the admission or rejection of testimony, the appellate court will not reverse if the ruling was immaterial and the result would not have been changed had the matter in controversy been placed upon the record.

*Contracts—Modification of contract—Consideration.*

5. A contract in writing cannot, in the absence of fraud, accident or mistake, be modified so as to show additional sums due, where no contemporaneous agreement is shown as to such sums, and where the writing itself fully deals with and provides for the dispute in question.

Argued October 5, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 58, March T., 1926, by plaintiff, from decree of C. P. Allegheny Co., Jan. T., 1924, No. 571, dismissing bill in equity, in case of Cyril C. Crick v. Joseph R. Paull and The Clarion River Power Co. Affirmed.

Bill for accounting of profits. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiff appealed.

*Error assigned* was, inter alia, decree, quoting record.

*John O. Wicks,* of *Weller, Wicks & Wallace,* for appellant.—Parol evidence is admissible to show other or greater consideration than that expressed in the writing: Henry v. Zurfleih, 203 Pa. 440; Miller v. Packing & Rubber Co., 268 Pa. 51.

*John M. Freeman,* of *Watson & Freeman,* with him *J. P. Fife,* of *Douglass, Fife & Young,* for appellee.

OPINION BY MR. JUSTICE SADLER, November 22, 1926:

While engaged in engineering work in northwestern Pennsylvania, Crick, the plaintiff, became interested in the water supply of the valleys through which flowed the Clarion River, and certain other streams of water. These he examined with a view to their possible development for the generation of electricity. He made surveys, plans and maps, and, in 1905, associated himself with three others, with a view of organizing to make use of the natural resources which existed. Efforts to secure the necessary financial support were unavailing, and it was not until 1910 that he was brought into contact with Paull, the defendant in the present litigation. In November of that year, the aid of the latter was sought, and an option given, by plaintiff and his then associates, to turn over such data as had been accumulated, for which compensation was to be given of a fixed interest in the corporation proposed to be formed. The plan was not consummated and no liabilities arose thereby. Further investigation by Paull disclosed that certain prior rights in the Clarion River territory had been acquired by others, and he secured these from one Butler, under agreement to make certain payments to him, if a successful carrying out of the hydro-electric scheme could be ultimately accomplished.

In January of 1911, a second contract, between Crick and his business partners on the one hand, and Paull

on the other, was entered into by which the former agreed to turn over the surveys in their possession, so that the latter could form a company, secure necessary charters and rights, obtain the aid of others in financing the proposition, and install the necessary plant for operation. In consideration, the parties of the first part were, upon completion of the work, to receive for their services five per cent of the capital stock of the company to be formed, and $50,000 in cash. It is now claimed by Crick that an oral promise was made sometime before his signing, a period fixed at from two days to two weeks, that he should receive an additional payment, the amount of which was not fixed. The alleged statement was: "C. C. you come and sign this, go along with this and I'll take care of you in addition to what is provided for in the contract, and you will never regret it." Thereafter a corporation was organized, charters secured, and plans for development approved by the water supply commission. The scheme of building outlined by plaintiff was not adopted, it being neither feasible nor legal. Paull then began efforts to secure funds to carry out the proposed enterprise, but was not successful in obtaining the necessary assistance until 1921, when a contract with Walbridge & Co. of New York was consummated, though an option to purchase had been given to it somewhat earlier.

Crick was employed by another concern from the time of the making of the 1911 agreement, above referred to, until the summer of 1912, when he agreed to perform services for the defendant at a fixed monthly salary, and did so for many months, while he was likewise engaged in work for others. In 1913, he promised to perform such further work as might be requested in consideration of the payment of his living and other expenses. This arrangement continued in force until 1917, when a regular salary was secured for him by defendant from a coal company in which the latter was interested, and

this compensation was paid until the fall of 1918, when the old agreement to furnish such aid as was called for, in return for expenses, was restored. The court has found that defendant paid to plaintiff in all for the services set forth the sum of $9,935.

In 1919, one Hart, not a party to this suit, suggested the raising of funds locally to finance the project, and an agreement was drawn setting forth the so-called "Foxburg plan." It provided for the payment to Hart and the other promoters of certain sums by a construction company, if the flotation was successfully carried out. Under this scheme Crick was to receive fifteen per cent of the stock of the new company, and $66,000 in cash, he in return to assume Paull's obligations under the 1911 agreement of five per cent and $50,000, the additional cash payment including expenses claimed, but all of this, as found by the court, was contingent upon the carrying out of the option, which failed utterly. The oral and written evidence fully justify the conclusion reached.

In support of the construction placed by Crick on the 1911 agreement, who insisted it did not correctly set forth his share of the proceeds, if the property was actually disposed of, evidence was offered to show that in 1912 Paull had agreed to divide the net profits of the enterprise with him "fifty-fifty," and the fixing of his interest in the abortive Foxburg plan was proven as an admission of the existence of another understanding regarding compensation. At this point it may be noted that he filed a bill in equity in 1920, never formally discontinued, based not on a contemporaneous parol agreement for remuneration other than that originally covenanted to be paid, but on an alleged securing of his signature to the contract by fraud and misrepresentation. The consequence of this proceeding as a rescission of the agreement of 1911, on which the present suit is based, as amended by the omitted stipulation as to additional pay, in connection with the formal notice of termination

of prior understandings, served January 7, 1920, was not made the basis for the determination of the court below in this case, and its legal effect need not be considered here.

After the sale to Walbridge in 1920, the cash and stock stipulated for in the original writing was fully paid to those entitled, and the Butler promise, made necessary to clear the ground for performance by Crick and his associates, fully complied with. This suit was instituted to recover an additional ten per cent of the stock and cash claimed to be due, the amount contemplated in the Foxburg plan, which attempted contract was never carried to completion, as we have seen. The bill was dismissed by the trial judge, and its findings and the decree entered approved by the court in banc.

Many assignments of error, directed to rulings on evidence offered, and conclusions reached, have been filed, and all have been examined. It is peculiarly a case depending on the testimony of witnesses whose credibility must be weighed and passed upon. The findings of the chancellor are entitled to the weight of a jury's verdict, and, where supported by evidence, though in dispute, are controlling here. If there is no testimony to justify the conclusions reached, or if dependent only on inferences to be drawn from proven facts, the determination will be considered on appeal, as if the matter were presented de novo. But if resting on the weight to be allowed to the narratives of those testifying, the trial judge is in better position to reach a proper judgment, and his finding will be given conclusive force: Miller v. Central T. & S. Co., 285 Pa. 472; Knorr v. Knorr, 286 Pa. 126. In passing upon the correctness of the admission or rejection of testimony, we will not reverse if the ruling was immaterial and the result would not have been changed had the matter in controversy been placed upon the record.

Here, the court below was plainly justified in holding that there was no definite enforceable parol agreement

proven to pay Crick any sum other than that provided for in his plainly expressed contract, the obligation of which has been fully liquidated. It was further correct in holding that even if the testimony was clear as to an additional promise, it could not, under the evidence, be said to have been contemporaneous, so as to modify the writing admittedly executed, no fraud, accident or mistake having been averred, and the question now in dispute having been fully dealt with, and provided for therein. A reference to Gianni v. Russell & Co., 281 Pa. 320, is a sufficient answer to the contrary view expressed by appellant. There is no contention that the understanding to give more stock and pay more money was made later upon some new supporting consideration, except as appeared in the Foxburg negotiations, which never became binding. Matters occurring subsequent to the signing of the contract are of course properly considered, when establishing admissions of prior understandings, but the evidence here produced did not show a definite or contemporaneous agreement so as to warrant a modification of the terms set forth in the 1911 contract. We see no reason to interfere with the conclusion which is appealed from. Nor would any good service be performed by discussing in detail the thirty assignments of error. All have been examined in light of the record, and what has been said in a general way sufficiently disposes of them all.

The decree is affirmed at the cost of appellant.