MacHenry *v.* Blair, Appellant.

Argued April 15, 1932.

Before TREXLER, P. J., KELLER, CUNNINGHAM and BALD-
RIGE, JJ.

*T. M. Gealey*, and with him *Ellsworth Jordan* and
*Clem M. Strobel*, for appellant, cited:  Lawrence v.
King, 299 Pa. 568; Lawrence's Estate, 286 Pa. Su-
preme Ct. 59.

*John E. Winner*, for appellee, cited:  Darlington's
Estate, 147 Pa. 624; Miskey's Appeal, 107 Pa. 611.

OPINION BY TREXLER, P. J., July 14, 1932:

Mrs. MacHenry brings this suit in equity against
her daughter Gertrude Blair alleging, in the bill, that
she owned certain property, that on April 11, 1929,
she then being 78 years of age, suffering from a fall
and in a critical condition, was asked by her daughter
to sign a paper, the effect of which would prevent her
two sons-in-law to participate in her estate, after her
death, and that relying upon the representations made
to her she signed a paper, which afterwards proved

to be an absolute conveyance of the property to her daughter. She further asserts that although said paper had attached to it what purported to be. an acknowledgment before a, notary public, she never made such acknowledgment, and further that there was no consideration for the deed; that the same was procured by fraud. She prays that the deed be cancelled and that a reconveyance be ordered.

The parties and their witnesses were heard and the chancellor found that there was no fraud in the procurement of the deed, but that there was a confidential relation existing between the parties, and that the mother was too feeble to contract "and that under such circumstances the deed should be annulled." There was no proof of mental incapacity existing at the time she executed the deed. At the hearing plaintiff gave coherent answers to all questions; her attending physician testified that the plaintiff was apparently bright and intelligent, at the time he attended her immediately subsequent to the accident, and that he was of the opinion that she had mental capacity to transact business. Other witnesses testified to a similar state of facts including the notary who took the acknowledgment, and explained to the plaintiff the contents of the deed. The woman it is true was suffering from palsy, but it does not appear that such affliction has any effect on mental power. The chancellor comments on the feebleness of the plaintiff at the time of the hearing, and that she failed to remember that a notary ever took her acknowledgment. Her condition at the hearing was not the criterion, it was to the time of the giving of the deed the inquiry should have been directed. Lapses of memory when shown by proof of unpremeditated utterances of a person have some bearing on mental power, although usually in common experience they show no evidence of derangement, but if a party to the suit

on the witness stand claims not to remember, it bears little probative force, for it likely may be a convenient method to avoid a direct answer. Old age, sickness, distress or debility of body do not prove or raise a presumption of incapacity: Null's Estate, 302 Pa. 64.

The court found that plaintiff gave the deed voluntarily and understood "as fully as a woman of her age and condition could understand business matters." We think the proof of lack of mental capacity was not sufficient to move the chancellor to annul the deed.

If, after the finding of the chancellor that there was no fraud, we inquire into the circumstances surrounding the transaction we find there was a good and valuable consideration for the deed. A recital of the facts found by the chancellor will sufficiently show this, and further comment will be unnecessary.

"Defendant is a daughter of the plaintiff, who has two other daughters. It is known that plaintiff has executed a will bequeathing and devising her estate to her three daughters in equal shares."

"At the request of plaintiff, defendant gave up her occupation and took up her residence with plaintiff to keep house for her and care for her and with the exception of a few short periods, defendant has lived with plaintiff continuously until March 1, 1931, when plaintiff of her own accord left defendant and the house in question in which they were both living. Defendant cared for plaintiff in her sickness, kept house for her and did all the household work and only received therefor her room and for part of the time her meals, she paying for her meals for a part of the time in which she was living with plaintiff and caring for her. Defendant performed this service faithfully, kindly and well. No one else was willing to do so."

"The execution, acknowledgment and delivery of the deed to defendant was a voluntary act of the plaintiff which she understood as fully as a woman of her age and condition could understand business matters.

It was done out of love and affection for defendant and on the undertaking of defendant to take care of plaintiff during the remainder of her life. Plaintiff agreed to make the payments on the building and loan mortgage and pay the taxes, she having a small fund of cash in bank and defendant having nothing and no opportunity to earn money because of her attendance upon plaintiff. There was no cash consideration from defendant to plaintiff for the execution and delivery of the deed.''

'' After a visit by plaintiff to the home of some of her other relatives, she left the home of herself and defendant voluntarily, apparently as result of persuasion of her other relatives. Defendant has been at all times and is now able, ready and willing to care for plaintiff according to the arrangements made at the time of the delivery of the deed. The plaintiff is now not willing to live with defendant and is hostile to her.''

The decree of the lower court is reversed, appellee to pay the costs.