Exton, Appellant, *v.* Saddler et ux.

Argued April 19, 1934.

Before Trexler, P. J., Keller, Baldrige, Stadtfeld, Parker and James, JJ.

*Jas. L. Kennedy,* for appellant.

*Daniel V. Crowell,* and with him *Charles C. Crowell* and *Howard H. Whitehead,* for appellees.

Opinion by Baldrige, J., July 13, 1934:

This appeal is from the decree of the court below refusing to declare a deed null and void and order the reconveyance by the defendant to the plaintiff of property described therein.

The plaintiff, 79 years of age, is childless and a widow, her husband having died on the 19th of May, 1931. She was the owner of two pieces of ground, numbered lots 22 and 24, in Westmoreland City, Westmoreland County. She averred in her bill that on April 8, 1932, when ill, she was induced by fraudulent representations, duress, and undue influence, on the part of the defendants, to execute a deed, by making her mark, conveying to defendants lot No. 24, having thereon erected an eight-room dwelling house, valued at $3,500, for the consideration of "one ($1.00) dollar, and other good and valuable considerations;" that she had no opportunity of obtaining advice of counsel or friends, nor was the deed read or explained to her, and she was ignorant of its contents.

An answer was filed, denying the material averments of fraud, etc. We will not attempt to review all the evidence. The chancellor, after a full hearing, found, in substance, on sufficient evidence, that when eight years of age, Elizabeth Saddler, one of the defendants and a niece of plaintiff's deceased husband, became a member of plaintiff's family and lived with them until she was twenty-four years old, when she was married to the defendant, W. R. Saddler. When she reached the age of seventeen, the plaintiff and her husband paid her $10 a month during the remaining period for her services in the household. After the death of her husband, plaintiff lived with defendants until May, 1932. W. R. Saddler was the executor of John Exton's will, and the estate at the time of the execution of the deed owed him $191.82 for money advanced. Plaintiff was then ill, suffering from a heart

condition and asthma; otherwise, her health was good for a woman of her age. There was no evidence that her mind was affected, or that she was subjected to undue influence; on the contrary, she appeared to have an intelligent knowledge of the property she owned. The deed was made in consideration of the indebtedness owed W. R. Saddler and for good will and affection towards defendants. It was agreed between the parties, when the deed was executed, that plaintiff was entitled to the rents from the real estate, but she was required to pay the taxes and insurance thereon. The defendants were to maintain the plaintiff in their own home for the remainder of her life without further compensation. The deed was read to her immediately before its execution, and she understood that she was conveying to the defendants this property, the fair market value of which was about $2,000.

There were three disinterested witnesses to the deed, one of whom was Peter H. Naley, a justice of the peace, now deceased, who took the acknowledgment. Prior to this time he had been her advisor in business affairs. Some time before the execution of the deed in question, plaintiff signed a will, drawn by Squire Naley, wherein she devised and bequeathed all her estate to the defendants.

Mr. Holden, a witness to the instrument, testified that Mr. Naley began with the date of the deed and read it over carefully to the plaintiff and explained what it was about, and that she expressed herself as well satisfied.

Dr. Shirey, who had been the attending physician of the plaintiff for a period of about twenty years, testified that when he was making a social call on her a short time after the execution of the deed, he found her in good condition, and the plaintiff told him she had conveyed this property to the Saddlers.

There was ample testimony for the court to find

that the grantor was competent; that she fully under-
stood the purport of her actions; that the conveyance
was a free, voluntary and intelligent act upon her
part; and that there was no proof of fraud or mental
incapacity, or the existence of such a confidential re-
lation as to shift to defendants the duty of showing
the honesty of the transaction. No dissatisfaction with
the contract was shown by her until about a year after
its execution. It was incumbent upon the plaintiff, in
her endeavor to set aside the written instrument, to
show, by clear, precise and indubitable testimony, the
existence of fraud: Pusic v. Salak et al., 261 Pa. 512,
104 A. 751; Andrews v. New Bethlehem Window
Glass Co., 268 Pa. 565, 112 A. 90; Englert v. Beckman
et ux., 99 Pa. Superior Ct. 162.

This case is similar in its facts to MacHenry v. Blair,
105 Pa. Superior Ct. 298, 161 A. 579, where a woman
brought a suit in equity against her daughter, alleging
there was no consideration for the deed; that it was
procured by fraud, and sought to have the deed can-
celled and a reconveyance ordered. There was, as
here, no proof of mental incapacity. The plaintiff
gave coherent answers to all the questions asked, and,
although she was ill, her affliction did not affect her
mental power to contract. In that case we held that
the proof of lack of mental capacity was insufficient to
warrant the annulment of the deed, and reversed the
lower court in declaring it null and directing a recon-
veyance of the real estate.

In Bauman v. Reithel et ux., 302 Pa. 239, 153 A.
330, the plaintiff was a widow, 83 years of age, with-
out direct descendants, and conveyed the house in
which she resided to the defendants. A bill was filed
to secure the retransfer of this realty, claiming that
the conveyance was the result of fraudulent practices
and was for an inadequate consideration. Part of the
consideration was the right of the grantor to continue

as a member of the grantees' family for the rest of her life, without any charge or expense for board or rent. The plaintiff in the bill became dissatisfied with the bargain and stated that the treatment accorded her was not of the character she required. Mr. Justice SADLER, in the course of his opinion (p. 244), cited with approval the following statement in Thorndell v. Munn, 298 Pa. 1, 10, 147 A. 848: "While a court of equity should, in proper cases, unhesitatingly set aside gifts between persons situated like decedent and defendant, the power to do so is of an exceedingly delicate character, not to be lightly exercised, and only to be invoked when the manifest justice of the case requires it."

The court in banc, in the final decree, ordered the defendants "to execute and deliver to the plaintiff, a deed, conveying to the plaintiff a life estate of, in, and to, the said lot of ground described in the said deed, dated April 8, 1932 ......, which estate so conveyed will terminate at the time of the death of the plaintiff." The chancellor's findings, based on sufficient evidence, and confirmed by the court in banc, are entitled to the same weight as the verdict of a jury. The appellate court will not reverse in such circumstances unless there is a manifest error, which is not present in this case: Beaver v. Slane, 271 Pa. 317, 114 A. 509; Crick v. Paull et al., 287 Pa. 431, 135 A. 103; Frazier v. Mansfield et al., 305 Pa. 359, 157 A. 798.

Decree of the lower court is affirmed at appellant's costs.