Lowe's Estate.

498

Argued April 1, 1935. Before FRAZER, C. J., SIMP-SON, KEPHART, MAXEY, DREW and LINN, JJ.

*Thomas L. Kane,* with him *Walter F. Campbell* and *Warren Van Kirk,* for appellants.

*Ernest Frey,* with him *R. A. Balph, James Balph* and *Theodore H. Schmidt,* for appellees.

OPINION BY MR. JUSTICE SIMPSON, May 13, 1935:

On January 26, 1934, Mary E. Lowe, testatrix herein, died. On January 30, 1934, there was offered for probate a will executed by her on July 23, 1931. It had been drawn by her son, who, as an individual and as testamen-

tary trustee and guardian, filed these appeals. It was admitted to probate, but before letters were actually issued, the Fidelity Trust Company of Pittsburgh, appellee herein, offered for probate a later will dated January 13, 1934. A caveat having been filed thereto by those interested under the prior will, the register of wills refused to receive the later will for probate, whereupon the trust company appealed to the Orphans' Court of Allegheny County, which took the testimony of the subscribing witnesses thereto, and opened the probate of the former will. Thereupon, the register, as authorized by section 19 of the Register of Wills Act of June 7, 1917, P. L. 415, 424, certified the entire record to the orphans' court, "for the determination by said court of such disputable and difficult matter," as had arisen or might arise in the course of the proceedings.

In the orphans' court the Fidelity Trust Company filed a petition setting up the facts, praying that the will of January 13, 1934, be decreed to be the last will and testament of testatrix and admitted to probate, and that the caveators be required to answer the petition. A citation was awarded, issued and served, and answers were filed, praying that an issue devisavit vel non be directed to the Court of Common Pleas of Allegheny County to have the following questions tried:

1. Whether the signature to said alleged last will and testament of Mary E. Lowe, dated January 13, 1934, was a forgery.

2. Whether at the time testatrix executed said alleged last will, she was of sound mind, memory and understanding.

3. Whether the execution of said will was procured by duress, imposition or undue influence exercised over the mind of testatrix by William J. Horrocks, Edward S. Horrocks, Elizabeth Ann Horrocks and Lottie Horrocks Peters, or either of them, or of some other person or persons.

To the petition for an issue the Fidelity Trust Company made reply, repeating its averment that the will of January 13, 1934, was testatrix last will and testament and as such should be "duly admitted to probate," and averred also that "on hearing by the court of the matters herein in dispute, the facts as developed will not warrant the court in directing an issue devisavit vel non to the court of common pleas to try questions of fact, and that the prayer of said petitioner in this respect should be refused."

The trial in the orphans' court was heard by one of its judges, appointed by the court to hear the evidence produced and report his conclusions thereon to the court in banc. This he did, and, after argument, reported that, in his opinion "the record should be returned to the register and that the will dated January 13, 1934, be admitted to probate as the last will and testament of Mary E. Lowe, deceased, and that letters [testamentary] be issued to the party entitled thereto." To this 86 exceptions were filed; the court in banc, after argument thereon, "ordered, adjudged and decreed that the exceptions be dismissed." The present appeal was thereupon taken, and the 86 exceptions, and the final order of the court below, were embodied in the 87 assignments of error. This, of course, was "love's labor lost." Four assignments would have sufficed: (1) Alleging error in refusing to grant an issue on the question of forgery; (2) in refusing to grant it on the question of lack of testamentary capacity; (3) in refusing to grant it on the question of undue influence; and (4) in entering the final decree. Along these lines we will consider the appeal.

In the opinion of the hearing judge it is said: "The only testimony adduced to prove that the signature is a forgery is that of persons who said they were familiar with decedent's handwriting, and experts, in whose opinion the signature is not in the handwriting of decedent. This was met by testimony of the same kind to the effect that it was genuine. [Moreover] The opinion evidence

against the validity of the writing is of no weight when met by the testmony of five credible and disinterested persons who actually saw [decedent] write her name, and we find as a fact that the signature to the paper of January 13, 1934, is in decedent's handwriting." We would have no difficulty in sustaining these conclusions, even if the subject-matter had never heretofore been considered by us; but, in view of our prior decisions in Eddey's App., 109 Pa. 406, Masson's Est., 198 Pa. 636, Fuller's Est., 222 Pa. 182, McWilliams's Est., 259 Pa. 526, and Guarantee Trust & Safe Deposit Co. v. Heidenreich, 290 Pa. 249, we need but refer to those cases as fully sustaining the decision of the hearing judge and the court in banc as against the opinion evidence referred to.

On the other two questions the hearing judge, later approved by the court in banc, said that, "On consideration of all the testimony, we are of opinion that at the time she executed the will of January 13, 1934, testatrix was of sound mind and disposing memory, and it was executed after mature deliberation and without any undue influence on the part of any one." There was ample evidence to sustain this finding also, and hence it would probably be sufficient to say that it should be approved, because "The findings of a chancellor [as the hearing judge is in such cases, if approved by the court in banc] are entitled to the weight of a jury's verdict, and, where supported by evidence, though in dispute, are controlling in the appellate court; and this is particularly so where [as here] the case depends on the testimony of witnesses, whose credibility must be weighed and passed upon" (Crick v. Paull, 287 Pa. 431; Phillips's Est., 244 Pa. 35, 47; Ligo v. Dodson, 301 Pa. 124, 130) ; especially if, also as here, the hearing judge saw and heard the witnesses, who testified for and against the views of the respective parties: Phillips's Est., 295 Pa. 349; Robb v. Stone, 296 Pa. 482; Karber v. Goldstrohm, 305 Pa. 470.

Perhaps we might well close our opinion at this point, adding only that we have carefully read and considered

the 923 pages of testimony, and have studied the exhibits in the case, and have found nothing casting even the slightest doubt on the foregoing findings of the hearing judge. We think it wise, however, to again refer to the principle underlying this character of case, especially as it appears to have been wholly overlooked by the appellants.

Several times in their brief appellants assert that "The rule is well settled in Pennsylvania that if a case is supported by competent oral testimony, no matter how strong may be the countervailing testimony, it is for the jury." While ordinarily this is so in common law actions, it is not so in cases of this kind, until a fundamental primary question, concerning the sufficiency of the evidence, has first been determined favorably to the contestant. In Eddey's App., 109 Pa. 406, we held that "Where the testimony taken under a petition in the orphans' court for an issue devisavit vel non, is such that the court in the exercise of a sound discretion ought not to sustain the verdict of a jury against the validity of the will based upon such testimony, the court should refuse to direct an issue."

"In an issue devisavit vel non the question of mental incapacity or of undue influence, should not be submitted to the jury, where the evidence is of such [an] unsatisfactory character that the court would not sustain a verdict upon it, and such submission upon such evidence is ground for reversal here": Herster v. Herster, 122 Pa. 239.

"In a will contest the judge sits as a chancellor, and must consider all the evidence; and the question is not whether a part of the evidence, standing alone, would support a certain verdict, but whether it would if considered as a whole. The right to an issue under the statute, depends upon whether there is a substantial dispute upon a material matter of fact, and, unless there is, the proponent is no more entitled to an issue on the question of forgery than is the contestant on a question of testamen-

tary capacity. The statute does not confine the dispute to any particular question": Fleming's Est., 265 Pa. 399.

In such cases a chancellor "cannot permit a jury to do what he, as a chancellor, would not do": Central Trust Co. v. Boyer, 308 Pa. 402.

"Upon proceedings to determine the validity of a will it is the duty of the hearing judge, sitting as a chancellor, after weighing the evidence impartially, to refuse to present the question to a jury, unless he feels the ends of justice call for a verdict against the will, or he is so uncertain on this point that he could conscientiously sustain a finding either way on one or more of the controlling issues involved": Fink's Est., 310 Pa. 453.

To the same effect are Cauffman v. Long, 82 Pa. 72; Wilson v. Mitchell, 101 Pa. 495; Knauss & Seip's App., 114 Pa. 10; Tasker's Est., 205 Pa. 455; McWilliams's Est., 259 Pa. 526; Kustus v. Hager, 269 Pa. 103; Tetlow's Est., 269 Pa. 486; Mark's Est., 298 Pa. 285; Minnig's Est., 300 Pa. 435; Roney's Est., 309 Pa. 309; Kane's Est., 312 Pa. 531.

As we have already said, after carefully reading and considering the evidence and exhibits we have found nothing casting even the slightest doubt on the findings of fact by the hearing judge. There were differences of opinion between decedent and appellant, but there is nothing even to suggest the possibility that this was due to decedent's incapacity, or to the influence, undue or otherwise, of any third party. Testatrix was between sixty and seventy years of age, was of a nervous temperament and was ill most of the time covered by the testimony. A few years before, she had a gall bladder removed, and continuously had an infection of the kidneys, for which she had been frequently operated on either at her doctor's office or in a hospital. This greatly weakened her and made her peculiarly susceptible to noises and other annoyances. Apparently appellant, her son, could not understand this, but her condition became such that finally she felt she could not live in the same house

with him and his family, and went to reside with some unmarried relatives, where there were no children to upset her in her weakened condition. The necessity for this, appellant did not appreciate, and so he kept importuning her, personally and through others, to come home again, though she repeatedly told him she could not do so. This persistence annoyed and hurt her greatly, and to a degree alienated the affection she for so many years had had for him and his family, until finally she made a new will, and, under her doctor's advice, went to the hospital, was again operated upon and died there. The story is a pitiful one, but there is nothing whatever in it to cause us to question the exercise of her legal right to dispose of her property as to her seemed best.

The order of the court below is affirmed and each appeal is dismissed at the cost of the appellant therein.