## Breyer Estate.

Argued April 13, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and HUGHES, JJ.

*John M. Smith, Jr.*, with him *William Austin Welsh, Thomas C. Egan, William T. Hannan, Austin F. Canfield* and *George D. Horning, Jr.*, for appellant.

*Joseph Gilfillan*, for appellee.

OPINION BY MR. JUSTICE LINN, May 25, 1944:

This appeal is from the dismissal of a petition that was filed July 26, 1940, and had for its ultimate object the review of the first and final account of the executors of Louisa Breyer, who died June 29, 1912, the account having been confirmed absolutely December 20, 1913. We need not discuss seriatim the assignments of error which occupy 56 pages of appellant's brief; to do so would unduly and unnecessarily prolong this opinion; we have considered the controlling issue presented by the appeal. We were informed at the argument that the appeal involved the ownership of one-half the capital stock of Breyer Ice Cream Company, a Pennsylvania corporation. It was incorporated February 5, 1908, with a capital of $5,000, increased pursuant to a stockholders' meeting held February 20, 1908, to $60,000—600 shares par $100. It succeeded to the business and property of a partnership theretofore composed of Louisa Breyer, Henry W. Breyer and Frederick Breyer. Of the authorized 600 shares, 400 were issued to Henry W. Breyer and

Louisa Breyer for the assets of the partnership and 200 were sold for cash to persons not members of the Breyer family. The stock certificate book and the certificates involved are in evidence. On March 25, 1908, the 400 share certificate was split into two, one for 350 shares issued to Henry W. Breyer and one for 50 shares issued to Louisa Breyer, subject to certain conditions stated on the face of the certificate, in substance, that it was issued and accepted subject to the right of Henry W. Breyer to purchase it at par within one year of her death. On May 28, 1909, the certificate for 350 shares was split into two, one for 200 shares issued to Henry W. Breyer and another, number 23, for 150 shares, also issued to Henry W. Breyer. This certificate became the subject of an agreement executed June 18, 1909, by Henry W. Breyer and Louisa Breyer and acknowledged by them October 6, 1909, and to a declaration of trust bearing the same date and acknowledged October 6, 1909, by Henry W. Breyer declaring that his mother, Louisa Breyer, was entitled "to all the Dividends that may be declared on said One hundred and fifty shares of Stock from the date of the issuance thereof to me, for and during all the term of her natural life, and that I, my heirs, executors and administrators will hold the said Certificate of stock and collect the dividends thereon and pay the same when and as collected, without deductions of any kind, to my said mother during all the term of her natural life, and further, that I hold and own the said Certificate and the shares therein named subject only to said interest for life. I hereby reserve to myself the full voting power belonging thereto." At that time Mr. Breyer appears to have been represented by E. F. Glenn, and Mrs. Breyer by Simon Garlic, Mr. Garlic having been retained by Mrs. Breyer at the instance of her daughter, Mrs. Cade, the appellant. The record shows that a draft of this declaration of trust which identified the certificate by number was sent by E. F. Glenn to Mr. Garlic for approval.

On September 7, 1911, Louisa Breyer made her will which, as we understand the petitioner's evidence, was drawn for her by Mr. Garlic. She gave all her household furniture and furnishings to the petitioner, who appears to have lived with her. She also devised to petitioner certain land in Philadelphia. She referred to the fact that she had made provision for a son, Bernard, securing him $15.00 a week which Henry W. Breyer had agreed to pay. She provided that immediately after her death the $5,000 "worth of stock of Breyer Ice Cream Company of which I shall die possessed" (referring to the 50 shares agreed to be sold to Henry W. Breyer at par) should be paid in equal parts to her two daughters, the present petitioner and her sister, Mrs. Geissler. Referring to her son, Henry W. Breyer, she said that she had provided for him during her lifetime and "felt relieved from further responsibility or of making any further provision for him in this" will. She gave the residue of her estate in equal shares to her two daughters, the appellant and Mrs. Geissler. She appointed her son, Henry W. Breyer, and her son-in-law, Christian J. Geissler, executors. The will and the certificate for 50 shares of stock were kept by Mrs. Breyer in her home. After Mrs. Breyer's death, the appellant delivered them to the executors. In accord with the conditions stated on the certificate, the executors sold the 50 shares of stock to Henry W. Breyer, who had the right to purchase: compare *Wallace's Estate,* 299 Pa. 333, 338, 149 A. 473. In their account, the executors charge themselves with "Sale of Stock Breyer Ice Cream Co. $5,000." The account came on for audit in due course before Judge ANDERSON. Attached to the account was the following statement: "We, the only parties interested in the foregoing account, hereby declare that we have examined the same and find it correct and pray the court to confirm the same as stated."

"Minnie B. Cade,
"Emma A. Geissler."

An appearance slip, filed with the auditing judge, stated that S. F. Glenn appeared for all parties. No exceptions to the adjudication were filed. It therefore became absolute December 20, 1913. Distribution to the legatees was made.

So matters stood until February 5, 1926, a date about two months after the death of Mr. Geissler, one of the executors of Louisa Breyer. The appellant, Mrs. Cade, then filed a petition to require the surviving executor to show cause why he should not file an account of the administration of the estate which had been administered and accounted for in 1913. She asserted in her petition that the executors had accounted for only 50 shares of the Ice Cream Company stock when in fact they should have accounted for 290 shares. The surviving executor, Breyer, filed a responsive answer. Petitioner then filed a replication in which she "admits error in the number of shares," and "joins issue as to 50 shares . . ." presumably the 50 shares which Mrs. Breyer held subject to the right of her son to buy them at par at her death. The case was referred to a master to take testimony and report his findings. He filed his report September 28, 1927. On October 1, 1927, the master's findings of fact and conclusions of law were adopted by the court and the petition was dismissed. No appeal was taken from that decision.

July 26, 1940, the surviving executor, Henry W. Breyer, having died meanwhile, Mrs. Cade began the present proceeding by petition for a citation to the executors of Henry W. Breyer and the executrix of Christian J. Geissler, to show cause why the decree of the Orphans' Court of October 1, 1927, dismissing Mrs. Cade's petition of 1926, "should not be opened, reviewed and set aside and to show cause why the one-half interest in the Breyer Ice Cream Company [referred to in the petition] should not be accounted for as part of the estate of the decedent." Though she amended her pleadings in the 1913 proceeding to limit the claim to 50 shares she now

claimed a "one-half interest" in the company. To that petition, the executors of Henry W. Breyer filed a responsive answer. They not only denied all the grounds for relief averred but set forth that they had duly notified the petitioner that on November 1, 1937, at Norristown, their account as executors of Henry W. Breyer, deceased, would be called for audit, where she might present any claim she had [1] and that none was presented. Mrs. Geissler, as executrix of her husband's estate, answered that his estate had been distributed more than ten years before. While the proceedings were going on, Mrs. Geissler, the other residuary legatee, was "permitted to join in the proceedings now pending as a party petitioner in her individual capacity" as if she had originally joined, etc. The court appointed a master to take testimony, report and recommend a decree. He did so and after hearing exceptions to his report, the court dismissed the petition. It is from that order that Mrs. Cade has taken this appeal.

If Mrs. Cade and Mrs. Geissler ever had any ground for setting aside the adjudication of the executor's account, they have long been barred by laches; in addition, however, we may say that we have carefully examined the record and must conclude that it clearly shows that they never have had any legal ground to complain of the adjudication.

In appellant's argument much was said about the manner in which and by whom the business was conducted prior to its incorporation in February, 1908. Except as so much family history, it has little or nothing to do with the issue raised which is whether the executors of the executors should again account. Presumably, petitioner presented all her grievances in the 1926 proceeding and all were rejected as ground for relief.

After a second interval of 13 years after the first petition for review was dismissed, someone conceived the

---

[1] See *Ray's Estate*, 345 Pa. 210, 25 A. 2d 803; *Timmins' Estate*, 338 Pa. 475, 13 A. 2d 7.

idea that early documents were forged and this proceeding was brought to obtain reconsideration of what had been adjudicated before. Though both executors and a number of important witnesses are dead and one important witness is not available because of serious illness, respondents were able to call a number of subscribing witnesses to challenged documents, the truth of whose evidence leaves no doubt of the genuineness of the papers and whose statements the court below accepted and which we accept here in accord with familiar rules. Accepting the evidence of these witnesses, as we do, the expert opinion evidence offered on behalf of petitioner to support the charge of forgery must be and is rejected, after the fullest consideration in the light of the arguments presented.

As stated above, the appellant and Mrs. Geissler approved the account and asked for its confirmation. The 1926 proceeding determined that both executed the consent. Mrs. Geissler signed at the instance of her husband who was one of the accountants. The appellant, Mrs. Cade, stated several different times during the course of her examination, that she signed it and remembered that she signed it at her home. S. F. Glenn, who appeared at the audit for the accountants and for the legatees, testified that Mrs. Cade signed it in his office where he had fully explained it to her. Notwithstanding this evidence in the former proceeding, they now deny that they signed it.[2] Their denial must of

---

[2] The brief of the appellees contains the following statement with respect to appellant's denial: "Petitioner, Minnie B. Cade, never found the courage to go to the point of calling her signature to the account a forgery until she fell in with Frank Morgan, the investigator and detective who has a one-third interest in the recovery and of which interest he has notified the Girard Trust Company and also recorded the Assignment in the office for the Recording of Deeds in and for the County of Philadelphia, and the Washington attorney, who also gets a one-third interest by assignment and who likewise has notified the Respondents and the attorney for the Respondents of

course be rejected, and the finding of the master and the court below on this point must be accepted because supported by evidence.

The signatures on two other papers are said to have been forged—petitioner's exhibits No. 6 and No. 9. It does not appear that No. 6 is relevant in this proceeding; it was dated January 5, 1904, and dealt with partnership relations in 1904; it is obviously immaterial what interests the partners had in 1904 if subsequently they distributed the successor corporation's stock in different proportions. This paper was signed by Louisa Breyer in the presence of Margaret Craig and Irma Baetzel, who subscribed as witnesses, and was acknowledged August 15, 1907, before Margaret Craig, a Notary Public. Margaret Craig could not testify; her physician was called and testified that she had suffered a stroke and was in such condition that she could not come to court and could not give a deposition. Irma Baetzel testified at considerable length. She was then employed in a real estate broker's office in which Margaret Craig was also employed. She testified that she saw Louisa Breyer sign it and saw Margaret Craig sign it. She not only knew Mrs. Breyer but saw her frequently. The other document, exhibit No. 9, is dated June 18, 1909. This instrument has some relevance because it was executed after the corporation succeeded to the business and property of the partnership. It was acknowledged on October 6, 1909. It is witnessed by Frances F. Paulson and Louis J. Suess and acknowledged before Mr. Suess, a Notary. It is signed by Henry W. Breyer and Louisa Breyer. It stated that Henry Breyer agreed to pay to his mother the dividends declared on 150 shares of stock and also to pay $15.00 a week to his brother, Bernard, for a specified time. Both Miss Paulson and Mr. Suess testified at

his one-third interest. The thought of her signature being forged to the consent we feel has been born of the speculative interests of her partners and herself in the recovery."

length about the execution and acknowledgment of the paper. The master and the court below accepted their evidence and regarded the document as genuine. The findings are amply supported by evidence and therefore we accept them. In connection with this exhibit No. 9, respondent's exhibit No. 40 should also be referred to, because it is dated the same day, and involves the same 150 shares; it is a declaration of trust by Henry W. Breyer that he holds stock certificate No. 23 for the purpose specified in exhibit No. 9. It was also witnessed by Frances Paulson and Louis J. Suess and was acknowledged before Mr. Suess. To destroy the effect of exhibits No. 6 and No. 9, the petitioners called witnesses who gave their opinions as experts that the watermark "Greir Typewriter Linen Bond" in the sheets on which the signatures were written was produced by a mechanical process not invented until some years after the dates appearing on the exhibits as the dates of execution and acknowledgment and for that reason could not have been executed on the dates on which they purported to be executed. This testimony was met by experts called by respondents who were equally positive that the watermarks in the papers involved were the product of hand process and not electrotype. We have examined this evidence with care in the light of the briefs and the exhibits submitted with the record and have concluded that in essentials we must reject the opinion evidence on which appellant relies and accept that on which respondents rely. The expert's opinion may be rejected unless the court is satisfied with the reasons given for the opinion: cf. *Fuller's Est.*, 222 Pa. 182, 70 A. 1005; *Lowe's Estate,* 318 Pa. 497, 178 A. 820; *Porter's Estate,* 341 Pa. 476, 482, 19 A.2d 374; *Young Estate,* 347 Pa. 457, 32 A.2nd 901. There is uncontradicted testimony that paper like that used in Exhibits No. 6 and No. 9 was manufactured at Mount Holly Springs, Pennsylvania, for the Greir Paper Company and was sold in Philadelphia prior to

the date of the execution of the papers. John C. Gilpin testified that he purchased paper with this watermark for the Graham and Gilfillan Law office during the years from 1905 to 1911. The custodian of records in the office of Secretary of the Commonwealth brought from his office in Harrisburg a certificate showing the increase of the capital stock of the Ice Cream company made on paper containing this Greir watermark. Wills written prior to 1911 on paper containing this watermark were produced from the office of the Register of Wills of Philadelphia.

Exhibit No. 6, as we have said, deals with partnership relations in 1904. The partnership was dissolved by death of Frederick Breyer. The surviving partners, Henry W. Breyer and Louisa Breyer, arranged to buy out the interest of the deceased partner and to create the corporation to succeed to the business. They did so in February, 1908. They distributed the stock. They were competent to do so. Louisa Breyer received the 50 shares subject to the conditions already stated; Henry Breyer received the rest subject to the conditions stated. So the matter stood until Mrs. Breyer's death in 1912. Her will of 1911 recognizes her interest as an interest of 50 shares subject to the option in Henry to purchase it at her death. So far as appears she never made any complaint; her mental capacity is not attacked; the distribution of the stock in the circumstances must be regarded as a complete settlement of any differences that may have existed between mother and son: compare *Burkholder's Appeal,* 105 Pa. 31, 36, 37; *Strawbridge's Estate,* 322 Pa. 406, 411, 185 A. 726, dealing with the rule governing the settlement of family disputes.

Exhibit No. 6 is not relevant and exhibit No. 9 is not important in determining whether, as petitioner contended, Louisa Breyer received too little stock in the company. Apparently she was satisfied. In her will she stated that she had made provision for Henry. She ap-

pointed him executor. She would hardly have made those provisions if she had felt that he withheld anything from her to which she was entitled. The record clearly shows, therefore, that there not only is no substantial dispute about title to property such as might justify a jury trial, in proper circumstances, but that there is no basis of dispute at all.

Mr. Justice ALLEN M. STEARNE did not participate in the decision of this case.

Order affirmed, costs to be paid by appellant.